DANIEL YESKE ET AL. *v.*
THE AVON OLD FARMS SCHOOL, INC., ET AL.
(2270)

DANNEHY, C.P.J., HULL and DUPONT, Js.

Argued October 12, 1983—decision released January 24, 1984

*Wesley W. Horton,* with whom were *Susan M. Cormier, Zbigniew S. Rozbicki* and *William Conti,* for the appellants (plaintiffs).

*Albert Zakarian,* with whom was *Dean Cordiano,* for the appellees (defendants).

DUPONT, J. The plaintiffs brought suit against the defendants, the owners of the realty on which the named plaintiff, a minor, had sustained injuries on May 23, 1971. After a trial by jury, a verdict was returned awarding $250,000 to the minor plaintiff.[1] The defendants then filed a motion to set aside the verdict and to render judgment in their favor in accordance with their prior motion for a directed verdict. The court granted the motion and rendered judgment for the defendants notwithstanding the verdict.[2] The plaintiffs have appealed from that judgment.[3]

The trial court's memorandum of decision cites three reasons for its action. It concluded (1) that the plaintiffs had failed to "produce evidence that the defendants knew or had reason to know that children were using this particular part" of the defendant's property, (2) that the closing argument of the plaintiffs' counsel contained statements which were an "unwarranted and unprovoked attack" on the defendants' counsel which deprived the defendants of a fair trial, and (3) that the testimony of an expert witness for the plaintiffs should not have been admitted into evidence.

I

The minor plaintiff, who was fourteen years old at the time of the accident, was injured while riding a mini-bike on a dirt trail on the defendants' land. He struck

---

[1] A verdict was also returned in favor of the father of the minor plaintiff for the expenses of his son's medical care.

[2] Practice Book § 321, in pertinent part, reads as follows: "After the acceptance of a verdict . . . a party who has moved for a directed verdict may move to have the verdict and any judgment rendered thereon set aside and have judgment rendered in accordance with his motion for a directed verdict . . . . If a verdict was returned the court may allow the judgment to stand or may set the verdict aside and either order a new trial or direct the entry of judgment as if the requested verdict had been directed."

[3] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83–29, § 2 (c).

a steel cable, which had been strung across the trail by the defendants, and sustained injuries to his face and neck. The steel wire ran between two metal poles set in concrete posts and had been placed there by the defendants to prevent trespassers from dumping garbage on the trail. There were no streamers, flags or signs on the wire at the time of the accident. The minor plaintiff had never been riding on this trail prior to the accident and the defendants had not given him permission to do so. The property of the defendants consists of about 2000 acres, including many acres of undeveloped land and heavily wooded land, as well as many trails other than the one on which the plaintiff was injured.

The plaintiffs' substitute complaint consists of one count and makes no distinction among the possible causes of action as invitee, licensee or trespasser. The judge charged the jury on all three alternative causes of action and a general verdict was returned. No party requested interrogatories. If the case was properly before the jury on the issue of trespass, it would not matter whether there was any evidence from which the jury could conclude that the minor plaintiff was an invitee or licensee. If a verdict is a general one, with no party having requested interrogatories, the presumption is that the jury found every issue in favor of the party who received the verdict. *Colucci* v. *Pinette,* 185 Conn. 483, 489, 441 A.2d 574 (1981); *Johnson* v. *Pagano,* 184 Conn. 594, 595–96, 440 A.2d 244 (1981); *Tedesco* v. *Julius C. Pagano, Inc.,* 182 Conn. 339, 341, 438 A.2d 95 (1980). Furthermore, the parties and the trial court are in agreement that there was no evidence from which a jury could conclude that the minor plaintiff was a licensee or invitee. It is only necessary, therefore, for this court to consider whether there

was sufficient evidence for a jury to conclude that the defendants were liable to the minor plaintiff in his status as a trespasser.

There is no disagreement of the parties as to when liability of a landowner attaches if there is physical harm to a minor trespasser caused by an artificial condition upon the land. Connecticut follows the rule of 2 Restatement (Second), Torts § 339.[4] *Duggan* v. *Esposito,* 178 Conn. 156, 158, 422 A.2d 287 (1979); *Wolfe* v. *Rehbein,* 123 Conn. 110, 113–14, 193 A. 608 (1937). The disagreement of the parties relates to the application of the restatement rule to the facts of this case, and to the interpretation of the words contained in the rule of 2 Restatement (Second), Torts § 339 (a).[5]

A possessor of land is liable for physical harm to minor trespassers caused by an artificial condition thereon, if, among other things, "the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass . . . ." 2 Restatement (Second), Torts § 339 (a). The defendants and the court, in its memorandum of decision, interpret the words "where the condition

---

[4] The section, at the time of the accident, read as follows: "A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and (b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

[5] The other tests of 2 Restatement (Second), Torts § 339 (b) through (e) are not in dispute and the parties have not briefed any issues relating to those tests. The trial court did not discuss any of these tests in its memorandum of decision.

exists'' as meaning the exact place where the accident occurred. The trial court concluded that, ''[a]lthough the school may have known of trespassers in general on the property, there was no evidence to indicate that the school was cognizant of trespassers at this particular location at the time in question.'' The plaintiffs argue that the liability of the defendants does not depend upon their knowledge of minor trespassers at the specific site but, rather, upon whether the defendants knew or had reason to know that children were *likely* to be trespassers on the site. The plaintiffs' brief emphasizes the word ''likely'' as used in the Restatement and the defendants' brief deemphasizes the word.

The question is whether the plaintiffs produced evidence sufficient for a jury to conclude that the accident site was one upon which the defendants knew or had reason to know that children were likely to be trespassers. There was sufficient evidence from which it could so conclude.

Prior to this accident, the defendants had had various problems with trespassers on many of their trails. They knew that operators of cars, motorbikes, minibikes and snowmobiles had used many of their other trails; they knew that children rode minibikes along railroad property which led to this trail; and they knew that a snowmobiler while riding on another of their trails had complained about the dangers of this type of cable. The defendants placed the fourteen foot cable across this particular trail for the very purpose of preventing trespassers from using it. The purpose of the barrier, according to the defendants, was to exclude garbage-dumping trespassers if they approached from the direction of a highway approximately forty feet away. The defendants' anticipation of trespassers cannot be deemed to be so finite as to exclude the likelihood that trespassers on minibikes would approach from the opposite direction.

"Likely" is defined as "of such a nature or so circumstanced as to make something probable." Webster, Third New International Dictionary. The evidence before the jury was such that it could conclude that the defendants knew or had reason to know that children were likely to trespass on the site of the accident.

The purpose of 2 Restatement (Second), Torts § 339 is to balance the interest of society in protecting trespassing children against the right of the landowner to use his own land as he sees fit. Prosser, "Trespassing Children," 47 Calif. L. Rev. 427, 452 (1959). Although trespassers do not have a right to demand a safe place on which to trespass, courts cannot look at children who trespass with "Blackstonian optimism which shuts its eyes to the immense prevalence of minor lawlessness . . . ." Bohlen, Studies in the Law of Torts p. 192 (1926). There is no legal requirement that a landowner improve wild land in order to make it safe for a trespassing child or that he be prohibited from maintaining structures on unimproved land which could cause harm to a child only if the child used great ingenuity or dexterity. The facts of this case do not involve a trespass on unimproved land or a structure which could cause harm only if used in an adroit or innovative way. Thus, the cases of *Hardy* v. *Missouri Pac. R. Co.*, 266 F. 860 (8th Cir. 1920), and *Bennett* v. *Public Service Co.*, 542 F.2d 92 (1st Cir. 1976), cited by the defendants, are inapposite. The minor plaintiff here was a trespasser on an improved portion of the defendants' land, a dirt trail, and did nothing inventive in the use of the trail or the cable.[6]

There is a paucity of reported cases involving trespassing children on large parcels of land contain-

---

[6] A special defense of the defendants was the contributory negligence of the minor plaintiff. The minor plaintiff variously stated that he was driving at speeds of twenty to twenty-five miles per hour, and thirty-five to forty miles per hour.

ing an artificial condition, and no case similar on its facts to the present case was found. The principles of the Restatement, however, remain intact whether the land area is large or small. It is a question for the jury to decide if a defendant is maintaining a latently dangerous instrumentality on his premises which is so exposed that he may reasonably anticipate that a child is likely to be hurt by it. It is also for the jury to decide if a defendant knows or has reason to know that children are likely to trespass on that portion of his land where the instrumentality is located. *Clover Fork Coal Co. v. Daniels,* 340 S.W.2d 210, 212 (Ky. App. 1960). Even if there is no evidence that any child had previously trespassed on the site, it remains a jury question whether, based on all of the evidence, the defendants knew or had reason to know that children were likely to trespass on the place where the condition existed. *Anderson v. Cahill,* 485 S.W.2d 76, 78 (Mo. 1972), rev'd on other grounds, 528 S.W.2d 742 (Mo. 1975).

There are a number of Connecticut cases involving § 339 of 2 Restatement (Second), Torts. A widely cited case, *Wolfe v. Rehbein,* 123 Conn. 110, 193 A. 608 (1937), holds that the trial court properly denied the defendant's motion to set aside the verdict where the evidence was sufficient for a jury to conclude that the owner knew or should have known that children were likely to trespass upon that part of his land upon which he maintained a condition likely to be harmful.

The question to be asked by the trial court, in determining whether to set aside a verdict for a plaintiff where § 339 (a) is involved, is whether the evidence, when viewed most favorably to the plaintiff, supports a jury finding that the landowner knew or had reason to know that children were likely to trespass upon that portion of his land upon which the condition existed. *Zarembski v. Three Lakes Park, Inc.,* 177 Conn. 603, 607, 419 A.2d 339 (1979); *Attardo v. Ambriscoe,* 147

Conn. 708, 712, 166 A.2d 458 (1960). The answer to that question turns upon whether the past conduct of the trespassing public could reasonably lead to a conclusion by the landowner that there was a likelihood of trespassing in the vicinity of the condition. Whether that condition exists on a large parcel of land or a small parcel of land is only one factor in determining whether children or others were likely to trespass near the condition. Other factors are the accessibility or inaccessibility of the condition and its nature.

A telephone pole hidden in brush on a large parcel of land, the uninsulated wires at the top of which could only be reached by a trespasser who leaped six feet in order to reach only the first step on the pole, does not provide facts sufficient for a jury to find the landowner liable for injury to the trespasser. *Bennett* v. *Public Service Co.,* supra. An unmarked wire which is not hidden in brush and is strung across a trail on a large parcel of land is not analagous to wires strung high in the air at the top of a pole hidden in brush on a large parcel of land. Contact with wires at the top of a pole located amidst a growth of vegetation is possible for only the most intrepid of trespassers. The very purpose of a trail approximately fourteen feet wide is to pass and repass by foot or vehicle. Contact with a wire strung across it is easily achieved by a trespasser.

The judge properly charged the jury as to the circumstances under which a landowner owes a duty to a trespasser.[7] The charge included a statement that the defendants did not know that the minor plaintiff was on the trail at the time of the accident. The questions to be determined by the jury were whether the defend-

---

[7] The defendants' motion to set aside the verdict and the judgment thereon contained the grounds that it was excessive, was based upon inadmissible and prejudicial evidence, and was based upon errors in the instructions to the jury. The defendants did not brief the excessiveness of the verdict or any errors in the jury instructions and, therefore, these issues are deemed

ants should have anticipated that the minor plaintiff would use the trail on the day in question, or, in light of what had transpired over the years, whether the defendants should have known that the minor plaintiff was likely to enter the trail. The jury was advised to consider the location of the trail, its construction, the signs or lack of signs and the complaints to the defendants about trespassers on other trails and the knowledge by the defendants that there were trespassers in general on their property. The charge was faultless. *Duggan* v. *Esposito,* 178 Conn. 156, 162, 422 A.2d 287 (1979).

On the basis of the evidence presented, the verdict for the plaintiffs should not have been set aside. The memorandum of decision misstates the law. The charge does not. The jury could properly find that the defendants knew or had reason to know that children were likely to trespass on the trail on which the accident occurred.

II

The second ground upon which the court based its granting of the motion to set aside the plaintiffs' verdict was that the remarks of the plaintiffs' counsel jeopardized the right of the defendants to a fair trial. The court was correct. The remarks were tasteless, prejudicial and evidenced a total disregard for the right of an opposing litigant to a fair trial. It is sufficient to

---

to have been abandoned. *State* v. *Samaha,* 180 Conn. 565, 565 n.1, 430 A.2d 1290 (1980). The defendants briefed the issue of whether it was error for the trial court to allow evidence of other accidents on the defendants' property at other times and locations other than on the trail where the accident occurred. The trial court did not decide that issue and, since the defendants did not file a cross appeal, this court need not consider it. *City Council* v. *Hall,* 180 Conn. 243, 247 n.5, 429 A.2d 481 (1980).

excerpt but a few portions of the rebuttal argument of the plaintiffs' counsel to indicate the flavor of the entire argument.[8]

The remarks went far beyond the boundaries of legitimate comments made during the heat of forensic warfare. These comments were flagrantly prejudicial to the defendants. No curative instruction by the court could remedy their maliciousness. The trial court also observed the courtroom behavior of the plaintiffs' counsel and deemed it, as well, to be prejudicial to the defendants. The court's admonition to the jury about the behavior of lawyers in general was far too mild, and it so concluded.

The trial judge is in the best position to determine whether the admonition given was a sufficient antidote for improper argument. Note, 10 A.L.R.3d 1330, §§ 7 and 8. If a counsel's remarks so prejudice the ability of a party to obtain a fair trial, a new trial is mandated. *Edwards* v. *Sears, Roebuck & Co.,* 512 F.2d 276, 286 (5th Cir. 1975). There are occasions when there is no possibility that any instruction will be curative; see *State* v. *Ubaldi,* 190 Conn. 559, 575, 462 A.2d 1001, cert. denied, 462 U.S. 1001, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983); and in such exceptional cases, the verdict should be set aside and a new trial ordered, regardless of whether the opposing party took exception to the remarks. *Hennessy* v. *Metropolitan Life Ins. Co.,* 74 Conn. 699, 710, 52 A. 490 (1902).

---

[8] Interspersed among comments about the defendants' counsel's appearance, the size of his firm, the position of his counsel table and the type of clients he represents, the plaintiffs' counsel also said, "I'm always very cautious with people who tell you, I'm going to tell you the truth . . . . Well, you know, it hasn't been too long since I was watching the movies for eighteen cents, and I remember a film involving Edward J. [sic] Robinson—he played a lawyer — it was a very dramatic case — of course I had no idea I was going to be a lawyer, but that has always stuck in my mind, and it was a very tricky trial, some man was being prosecuted for poisoning someone, and there was a very remarkable incident that occurred in the Courtroom, in which Mr. Robinson, playing a fancy lawyer from New York, to convince the jury that his client didn't commit the murder, he took

A verdict should be set aside if there has been manifest injury to a litigant, and it is singularly the trial court's function to assess when such injury has been done since it is only that court which can appraise the atmosphere prevailing in the courtroom. *Pisel* v. *Stamford Hospital,* 180 Conn. 314, 322, 430 A.2d 1 (1980); *Cavallaro* v. *Offen,* 29 Conn. Sup. 20, 21, 269 A.2d 83 (1969). The trial judge has discretion as to the latitude of the statements of counsel made during argument. Practice Book § 296. The court here acted properly in setting aside the verdict because of the statements of the plaintiffs' attorney.

## III

The trial court also set aside the verdict because the jury was allowed to consider the testimony of an expert witness who was not a treating physician and whose existence as a witness was not announced to the defendants until the last week of the trial. The witness was allowed to testify over the objection of the defendants. The memorandum of the court states that it was an abuse of discretion for it to have allowed the testimony. A court has wide latitude in deciding whether to exclude the opinions and conclusions of witnesses. *Robinson* v. *Faulkner,* 163 Conn. 365, 372, 306 A.2d 857 (1972). In the present case, the court exercised its discretion to admit the testimony and the defendants did not seek

the poison that was the exhibit, and drank it, made a summation to the jury, walked out of the Courtroom, and then he had his doctors there that pumped out his stomach. His client won the case, of course. And I said to myself, gee, I don't ever want to be a lawyer. And I hope that we don't win cases that way. . . . Now, this young man [the plaintiff] has lived all his life in Connecticut; Bristol and Avon. Now, don't you think he'd [defendants' counsel] be clever enough, at the appropriate time during the trial, to bring in the doctor, to bring in the hospital reports, showing you that this man had surgery? Now, what would Edward J. [sic] Robinson do in that case that he tried, under these circumstances; waited 'til the last minute so that there would be no opportunity for us to go into this issue to see if there in fact was surgery, because certainly all the evidence is in. Truth? Honesty?"

a continuance in order to obtain their own rebuttal expert witness. There was no abuse of discretion in the admission of the testimony and the court should not have set aside the verdict because of the introduction of the testimony.

## IV

The trial court's basis for setting aside the verdict was three-pronged. Had it been correct in setting aside the verdict because there was no evidence from which the jury could find liability, the remedy would clearly have been the rendering of judgment for the defendants, notwithstanding the verdict for the plaintiffs. *Moriarty* v. *Lippe,* 162 Conn. 371, 381–82, 294 A.2d 326 (1972); *Petrillo* v. *Bess,* 149 Conn. 166, 171, 179 A.2d 600 (1961); *Senderoff* v. *Housatonic Public Service Co.,* 147 Conn. 18, 21, 156 A.2d 517 (1959). The court also set aside the verdict because it believed the allowance of the testimony of the surprise expert witness was an abuse of discretion and because of the prejudicial remarks of the plaintiffs' counsel.

Practice Book § 321 seemingly gives the court discretion to order a new trial or to direct the entry of judgment for the defendants, in the event the verdict should be set aside. Which of the alternate remedies is appropriate, however, depends upon the reason the verdict was set aside. If the verdict is without support in the evidence, judgment should be rendered notwithstanding the verdict for the opposing party unless a new trial would, with reasonable probability, supply the evidence necessary to support a verdict. *Masterson* v. *Atherton,* 149 Conn. 302, 316, 179 A.2d 592 (1962). If the verdict was set aside because of prejudicial remarks of counsel, a new trial is the remedy. *Edwards* v. *Sears, Roebuck & Co.,* supra, 283; *Cavallaro* v. *Offen,* supra, 22.

If a judgment notwithstanding the verdict were rendered for the defendants because of the remarks of

counsel for the plaintiffs, the plaintiffs themselves would be painted with the brush of their legal representative. Such a result would be as inequitable to the plaintiffs as the failure to set aside the verdict because of the remarks of the plaintiffs' counsel would have been to the defendants.

A new trial is necessary because the comments of the plaintiffs' counsel during final argument deprived the defendants of a fair trial and may have infected all aspects of the trial, including the size of the verdict and the finding of liability itself. See *Wooster* v. *Wm. C. A. Fischer Plumbing & Heating Co.,* 153 Conn. 700, 702, 220 A.2d 449 (1966); *Mickel* v. *New England Coal & Coke Co.,* 132 Conn. 671, 681, 47 A.2d 187 (1946); *Hawley* v. *Rivolta,* 131 Conn. 540, 543–44, 41 A.2d 104 (1945).

There is error in part, the judgment notwithstanding the verdict is set aside and a new trial is ordered.

In this opinion the other judges concurred.