James T. BURKE, Paul R. Hamilton
and Paul Morris, Defendants
Below, Appellants,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: June 18, 1984.
Decided: Oct. 23, 1984.

William N. Nicholas, argued, and Dennis A. Reardon, Dover, for appellants.

Gary A. Myers, Deputy Atty. Gen., Georgetown, for appellee.

Before HERRMANN, C.J., McNEILLY and MOORE, JJ.

HERRMANN, Chief Justice:

The defendants, James T. Burke, Paul R. Hamilton, and Paul Morris, appeal from convictions of Rape in the First Degree and Conspiracy in the First Degree. The Superior Court sentenced each of the defendants to life imprisonment on the Rape charge and 10 years imprisonment on the Conspiracy charge. We find no reversible error upon any of the grounds of this appeal. Accordingly, we affirm.

I

The State's evidence established the following facts:

In April 1982, the victim accompanied a member of the Pagan Motorcycle Club (hereinafter "Pagans") to a "swap meet", a gathering for the sale or exchange of motorcycle parts. The defendants were present at the meet. The Pagans' leader ordered the victim to leave on the suspicion that she was a "narc." She returned to the tavern where she worked. From there, a friend, Sandy Lepkowski, drove her to the apartment which she shared with defendant Morris and the tavern's manager. Lepkowski left and the victim fell asleep on the couch.

Lepkowski returned to the tavern to work as waitress for a party hosted by the Pagans. When she arrived, the defendants were present; however, they soon left. When they returned defendants Hamilton and Morris were heavily intoxicated. Lepkowski heard defendant Burke suggest to Hamilton and Morris that they go to the victim's apartment.

The victim was still asleep on the couch when she heard the defendants banging on the locked door, finally kicking it in. They asked why she had been telling people that she was a "Pagan's old lady." Thereupon, the defendants ripped off the victim's clothes, raped her, burned her hair with cigarettes, violated her with an empty beer bottle, and committed other gross personal abuses. They then left the apartment, taking her clothes with them.

Lepkowski arrived later. She took the victim to her parents' house, where they spent the night. The next day, a physician at the Wilmington Medical Center examined the victim and took her statement. That day, the victim and Lepkowski also gave statements to the police and to a social worker. The following morning, Lepkowski gave a tape-recorded statement to the police.

Some time later, in the presence of the defendants and their counsel, Lepkowski signed an affidavit indicating that her statements to the police were false; that she and the victim had fabricated the incident. In November 1982, at trial, Lepkowski was called by the State to testify. While on the stand she asked to consult an attorney. She did not testify further, however, because, soon thereafter, the Court declared a mistrial for other reasons.

In January 1983, Lepkowski and her attorney met with agents of the Federal Bureau of Investigation. She recounted the events surrounding the rape and told the agents that her affidavit was false; that the defendants had composed the fabrication statement she had given to their counsel. Later that month, Lepkowski was injured in an automobile accident and was in a coma for several days.

At the second trial, the State again called Lepkowski as a witness. While she remembered that she knew the appellants, she claimed that as a result of the accident she had no recollection of the victim, of the events surrounding the rape, or of any subsequent statements she had made regarding the incident. Then, relying on 11 *Del.C.* § 3507,[1] the State offered into evidence: (1) through the police officer and social worker, Lepkowski's oral statements made at the hospital; (2) through a police detective, the transcript of her tape-recorded statement made to the police; and (3) through an FBI agent, her statement to the FBI in January 1983.

## II

The defendants contend that because Lepkowski's memory loss prevented an effective cross-examination, admitting her prior out-of-court statements into evidence violated their Sixth Amendment[2] rights to confront her as a witness.

This Court has heretofore examined and interpreted 11 *Del.C.* § 3507 upon which the State relies in this connection: In *Keys v. State,* Del.Supr., 337 A.2d 18 (1975), we held that, under § 3507[3], a prior out-of-court statement of a witness is not admissible unless the witness takes the stand and is questioned upon direct examination as to the events at issue and the out-of-court statement, itself, and is subject to cross examination. 337 A.2d at 23. And in *Johnson v. State,* Del.Supr., 338 A.2d 124 (1975), this Court found no error in admitting the rape victim's out-of-court statement when she testified at trial that she

remembered only the beginning of the attack and nothing of the three statements describing the assailant she subsequently gave to the police. There, this Court stated:

> While the Statute does require that the out-of-court declarant be subject to cross-examination, it does not expressly require any specific quality of cross examination or key the admission of the out-of-court statement to any particular recall in court on the part of the witness. To the contrary, the draftsmen of the Statute expressly contemplated that the in-court testimony might be inconsistent with the prior out-of-court statement. One of the problems to which the Statute is obviously directed is the turncoat witness who cannot recall events on the witness stand after having previously described them out-of-court. *We conclude that there is nothing in the Statute or its intent which prohibits the admission of the statements on the basis of limited recall.* (Emphasis supplied). 338 A.2d at 127.

In *Johnson,* this Court addressed the question, raised here, of whether the admission of a prior out-of-court statement constitutes a violation of the Confrontation Clause of the Sixth Amendment on the ground of deprivation of effective cross-examination arising from limited courtroom recall.

There we agreed with the concurring opinion of Justice Harlan in *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).[4] Justice Harlan viewed

---

1. 11 *Del.C.* § 3507 provides in pertinent part:
   § 3507. Use of prior statements as affirmative evidence.
   (a) In a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value.
   (b) The rule in subsection (a) of this section shall apply regardless of whether the witness's in-court testimony is consistent with the prior statement or not. The rule shall likewise apply with or without a showing of surprise by the introducing party.

2. The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right ... to be confronted with witnesses against him." U.S. Constit. Amend. VI.

3. In *Keys,* the Statute is identified as 11 *Del.C.* § 3509 of the 1953 Delaware Code.

4. In *California v. Green,* five Justices joined in holding that, on the record of the case, the issue was not "ripe for decision". 399 U.S. at 169, 90 S.Ct. at 1940.

the Confrontation Clause, not as an absolute guarantee of the right to cross-examine, but rather as an "availability rule, one that requires the production of a witness when he is available to testify." 399 U.S. at 182, 90 S.Ct. at 1947. He wrote: "[T]he Confrontation Clause of the Sixth Amendment reaches no further than to require the prosecution to *produce* any *available* witness whose declarations it seeks to use in a criminal trial," 399 U.S. at 174, 90 S.Ct. at 1943; and continuing:

> The fact that the witness, though physically available, cannot recall either the underlying events that are the subject of an extra-judicial statement or previous testimony or recollect the circumstances under which the statement was given, does not have Sixth Amendment consequence. The prosecution has no less fulfilled its obligation simply because a witness has a lapse of memory. The witness is, in my view, available. To the extent that the witness is, in a practical sense, unavailable for cross-examination on the relevant facts, ... I think confrontation is nonetheless satisfied.
>
> 399 U.S. at 188–189, 90 S.Ct. at 1950–1951.[5]

Adapting Justice Harlan's view in this connection, this Court stated in *Johnson:*

> The prosecution has physically produced the declarant in court and has thus done everything in its power to give the defendant the fullest opportunity to present his best defense. The jury can make a judgment in the light of all the circumstances presented, including any claim by the witness denying the prior statement, or denying memory of the prior statement or operating events, or changing his report of the facts. [citing cases] 338 A.2d at 128.

Since the decision in *Green* in 1970, and *Johnson* in 1975, the U.S. Supreme Court has addressed the problem in *Ohio v. Rob-erts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). There, the Court applied a two-part test in the application of the Confrontation Clause to a prior out-of-court statement: (1) the prosecution must either produce the declarant or show why the declarant is unavailable; and (2) if the witness is unavailable, the prosecution must demonstrate why the out-of-court statement is reliable. 448 U.S. at 65, 100 S.Ct. at 2538. Thus, in *Roberts*, the factor of the availability of the witness was emphasized as in Justice Harlan's opinion in *Green*. And, in *Roberts*, the element of "indicia of reliability" was reemphasized by the Court. It seems settled that Sixth Amendment Confrontation Clause rights are not offended so long as there are indicia of reliability sufficient to "afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement". *Mancusi v. Stubbs*, 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972); *California v. Green, supra; Dutton v. Evans*, 400 U.S. 74, 89, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970).

And finally in *Roberts*, we are told that although full cross-examination is preferred for ensuring rights under the Confrontation Clause, where other interests, such as the need for effective law enforcement, compete with Sixth Amendment rights, the Court may look to the reliability of the evidence as an alternative method for protecting those interests. 448 U.S. at 63–66, 100 S.Ct. at 2537–2539. *See United States ex rel. Haywood v. Wolff,* 7th Cir., 658 F.2d 455, *cert. denied,* 454 U.S. 1088, 102 S.Ct. 649, 70 L.Ed.2d 625 (1981).

\* \* \*

▇▇▇ Turning now to the application of the foregoing teachings to the prior out-of-court statements of Lepkowski here in controversy:

(1) The witness was produced by the State, questioned by the prosecution on

---

**5.** A number of jurisdictions have endorsed Justice Harlan's views. *See United States ex rel Thomas v. Cuyler*, 3d Cir., 548 F.2d 460 (1977); *United States v. Payne,* 4th Cir., 492 F.2d 449, *cert. denied,* 419 U.S. 876, 95 S.Ct. 138, 42 L.Ed.2d 115 (1974); *Robinson v. Wisconsin,* Wisc.Supr., 102 Wis.2d 343, 306 N.W.2d 668 (1981).

direct examination, and made available to defense counsel for cross-examination. Thus, there was compliance in this case with the Justice Harlan rule of availability which was approved by us in *Johnson* and emphasized in *Roberts*.

(2) We find adequate "indicia of reliability" to afford the jury a satisfactory basis for evaluating the truth of the prior statements in that (a) the statements made to the police officer and the social worker at the hospital had a trustworthiness akin to matters *res gestae;* (b) the reliability of the statement made the next day to the police detective was enhanced by its timing and its having been tape-recorded; and (c) the trustworthiness of the statement to the FBI was buttressed by the credibility of the FBI personnel and the presence of a member of the Bar. These factors were indicia of reliability sufficient, in our view, to afford the jury a satisfactory basis for evaluating the truthfulness of the statements.

Moreover, with Lepkowski on the stand, the trustworthiness of her prior out-of-court statements could have been tested by defense counsel. The genuineness of her limited recall was open to cross-examination and her demeanor on the stand was subject to the jury's scrutiny in weighing the truthfulness of her statements. The following thought of Judge Learned Hand is appropriate:

> The possibility that the jury may accept as the truth the earlier statements in preference to those made upon the stand is indeed real, but we find no difficulty in it. If, from all that the jury see of the witness, they conclude that what he says now is not the truth, but what he said before, they are none the less deciding from what they see and hear of that person and in court. There is no mythical necessity that the case must be decid-

ed only in accordance with the truth of words uttered under oath in court.
*DiCarlo v. United States*, 2d Cir., 6 F.2d 364 *cert. denied*, 268 U.S. 706, 45 S.Ct. 640, 69 L.Ed. 1168 (1925).

\* \* \*

Accordingly we hold, under the facts and circumstances of this case, that the admission of Lepkowski's prior out-of-court statements was proper under 11 *Del.C.* § 3507, and did not violate the defendants' Confrontation Clause rights because of the absence of effective cross-examination of Lepkowski.

### III

During the cross-examination of the victim, defense counsel sought to impeach her by referring to her testimony at the preliminary hearing and questioning her about details in her direct testimony which had not been included in her prior testimony. The prosecution suggested the admission of the transcript of the victim's entire statement at the preliminary hearing; defense counsel declined. Subsequently, on redirect, the State again offered the transcript; the defense objected on the ground that it had not been properly authenticated. The State then reoffered the transcript under Delaware Rule of Evidence 106;[6] the defense objected on the ground that only the portions used by the defense could be admitted. Some time later, the Trial Judge admitted the entire transcript under D.R.E. 106.

The defendants contend that because they did not introduce into evidence any part of the transcript itself, they had not introduced "a writing or recorded statement or any part thereof"; that, therefore, D.R.E. 106 is not applicable and the Trial Judge erred. We find no merit in this contention.

6. D.R.E. 106 provides:
   Rule 106. Remainder of or Related Writings or Recorded Statements.
   When a writing or recorded statement or part thereof is introduced by a party, an ad-

verse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

■ The defendants' narrow reading of D.R.E. 106 would violate the spirit of the Rule. In the interests of fairness, the purpose of the Rule is to prevent misleading impressions which often result from taking matters out of context. S. Saltzburg, Federal Rules of Evidence Manual, Rule 106 (Michie 1982).[7] To this end, D.R.E. 106 applies to an oral quotation from a part of a document; the offer of the document itself, in whole or in part, is unnecessary to the application of the Rule. *United States v. Rubin*, 2d Cir., 609 F.2d 51 (1979), *aff'd on other grounds*, 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981); *United States v. Baron*, 7th Cir., 602 F.2d 1248, *cert. denied*, 444 U.S. 967, 100 S.Ct. 456, 62 L.Ed.2d 380 (1979). *See* S. Saltzburg, Federal Rules of Evidence Manual, Rule 106, n. 3; 21 C. Wright & K. Graham, Federal Practice and Procedure § 5075 (1977).

■ D.R.E. 106 vests in the Trial Judge discretion as to whether a recorded statement "ought in fairness ... be considered contemporaneously with [the portion introduced by a party]." D.R.E. 106. The defendants contend that the Trial Judge abused his discretion in failing to indicate on the record the reasons why fairness required that the entire transcript be admitted.

■ The record indicates that, during cross-examination of the victim, the prosecution moved to admit the entire transcript of the victim's preliminary hearing testimony. The Trial Judge declined to rule on the admissibility of the transcript until some time later in the trial. We presume that, during the interim, the Trial Judge had the matter under advisement in light of the fairness requirements of D.R.E. 106. We

conclude that the Trial Judge exercised his discretion in admitting the entire transcript under the fairness provision of D.R.E. 106. We find no abuse of discretion in this regard.

## IV

The defendants contend that in refusing to sequester the State's chief investigating officer, the Trial Judge abused his discretion, especially because the State failed to make a showing that the officer's presence was necessary and why he should not have been required to testify first. In support, the defendants cite *Grace v. State*, Del. Supr., 314 A.2d 169 (1973), *Holmes v. State*, Del.Supr., 422 A.2d 338 (1980), and other cases decided before the adoption of D.R.E. 615.

Under D.R.E. 615,[8] the trial court, at the request of a party or on its own motion, may sequester a witness so that he cannot hear the testimony of other witnesses. However, under D.R.E. 615(2), the trial court may not exclude "an officer or employee of a party which is not a natural person designated as its representative by its attorney." D.R.E. 615(2).

Courts applying F.R.E. 615(2)[9] have generally held that the trial court may not exclude the State's chief investigating officer, even though he will testify, because he is an officer of the State, "a party which is not a natural person." D.R.E. 615(2). *E.g., United States v. Parodi*, 4th Cir., 703 F.2d 768 (1983); *United States v. Brown*, 2d Cir., 699 F.2d 585 (1983); *United States v. Butera*, 11th Cir., 677 F.2d 1376 (1982), *cert. denied*, 459 U.S. 1108, 103 S.Ct. 735 (1983).

---

7. D.R.E. 106 tracks Federal Rule of Evidence 106. D.R.E. 106, Comment.

8. D.R.E. 615 provides:
   At the request of a party the court may order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an offi-

cer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his case.

9. D.R.E. 615 tracks F.R.E. 615 except that "may" was substituted for "shall" in the first line. D.R.E. 615 Comment.

Adopting the rationale of these cases, we find no error in the Trial Court's refusal to exclude the State's chief investigator in this case.

## V

During the testimony of Detective Kane, the State offered notes the detective made while interviewing the victim at the hospital. At the conclusion of the social worker's testimony, the State offered a memorandum she prepared containing the statements of Lepkowski and the victim. And, at the beginning of Detective Pepper's testimony, the State introduced a transcript of a recorded statement which Lepkowski made two days following the incident.

The defendants contend that the notes, memoranda, and the transcript were inadmissible as prior consistent statements, in the absence of impeachment. This contention is without merit. In addition, defense counsel objected to the social worker's memorandum on the ground that it was merely cumulative and embellished testimony previously given by her. The Trial Court indicated that it would strike any portions objectionable as embellishment or editorializing; however, the defense failed to designate any such portions. We find no merit in this ground of the appeal.

## VI

The defendants contend that the Trial Judge abused his discretion in refusing to allow defense counsel to read a portion of the trial transcript to the jury during his summation. Nonetheless, it appears that defense counsel proceeded to make a substantially correct statement of the testimony, from memory.

The defendants' contention is without merit. As a general rule the trial court has discretion to permit counsel to read from the trial transcript during sum-

mation. *Floen v. Sund*, Minn.Supr., 255 Minn. 211, 96 N.W.2d 563 (1959); *Douglas v. Duvall*, Utah Supr., 5 Utah 2d 429, 304 P.2d 373 (1956). In any event, however, there can be no abuse of discretion without prejudicial error. Where, as here, counsel was able to rearticulate from memory a substantially correct account of the testimony he sought to read, the Court's refusal to permit such action was not prejudicial and, therefore, would not support a reversal. *Bing Fa Yuen v. State*, Md.Spec. App., 43 Md.App. 109, 403 A.2d 819, 826 (1979), *cert. denied*, 444 U.S. 1076, 100 S.Ct. 1024, 62 L.Ed.2d 759 (1980).

## VII

The defendants contend that a number of remarks made by the prosecutor in closing arguments were improper, thereby entitling them to a reversal.

Ordinarily counsel is afforded a great deal of latitude in summation. *Donnelly v. DeChristoforo*, 416 U.S. 637, 646–47, 94 S.Ct. 1868, 1872–73, 40 L.Ed.2d 431 (1974). Therefore, unless we find a clear abuse of discretion or undue prejudice to the defendants, we will not interfere with the Trial Court's determination as to the proper bounds of closing argument. *Yeske v. Avon Old Farms School, Inc.*, Conn. App., 1 Conn.App. 195, 470 A.2d 705 (1984); *Leasure v. Heller*, Pa.Supr., 436 Pa. 108, 258 A.2d 855 (1969).

The appellants contend that it was improper for the prosecutor to analogize the duty of jury service with his service in the armed forces during the Vietnam War. It was permissible for the prosecutor to remind the jury of its duty to uphold the law. *See Wallen v. Commonwealth*, Ky.Supr., 657 S.W.2d 232, 234 (1983). While we find the personalized, ad hominem nature of the prosecutor's remarks [10] to be objectionable and subject to

---

10. Statements to the jury, such as the following made by the prosecutor in this case, border on professional impropriety:

> Now, who has the duty to uphold that expression, to uphold the law? You twelve people have that duty. Simply enough, many of

admonition, they do not amount to grounds for reversal.

■ The defendants argue that the Trial Judge should not have permitted the prosecutor to urge the jury to use common sense in assessing a witness's credibility or to weigh the victim's and Lepkowski's motivations for continued participation in the trial. These comments were proper because they address credibility; credibility is always at issue. *Franks v. State*, Del. Supr., 398 A.2d 783 (1979).

■ The defendants contend that the prosecutor made a prejudicial comment in admonishing the jury to weigh the appellants' guilt, not on the fact of membership in the Pagans, but rather on the basis of the evidence. There was no prejudice in telling the jury to dismiss irrelevant concerns. *Hunter v. State*, Del.Supr., 420 A.2d 119, 122 (1980).

■ The defendants argue that the prosecutor acted improperly by mentioning in his closing the fee which the defense paid its expert witness. Fee arrangements may bear on the impartiality and, therefore, the credibility of an expert witness. Hence, an expert witness's fee is a proper subject on which to comment to the jury. *Werner v. Lane*, Me.Supr., 393 A.2d 1329, 1338 (1978).

■ In enumerating the elements for the offense of rape, the prosecutor reviewed evidence that the victim had not lubricated during intercourse, suggesting to the jury that from this fact they could infer a lack of consent on the part of the victim. The defendants contend that this remark constituted an impermissible inference. We disagree. Inferences from the evidence are within the bounds of argument and are therefore permissible. *Ac-*

cord *McNally v. Eckman*, Del.Supr., 466 A.2d 363, 374 (1983).

The defendants argue that the prosecutor made other improper comments during his closing argument. The defendants cite as reversible error: (1) a comment to the jury that the failure to find any of a particular defendant's hair at the scene of the crime did not necessarily mean that he had not been there, by way of illustration asking the jurors to look at their chairs for evidence of their own hair; (2) in rebuttal to the defense charge that the victim and Lepkowski concocted the rape, a comment to the jury that the women did not have to appear at trial, when both the victim and Lepkowski had been subpoenaed by the State; (3) a comment in rebuttal summation to explain circumstantial evidence where the defense summation did not mention circumstantial evidence; (4) a comment suggesting to the jury that defense counsel had asked them to "guess" how certain events happened; (5) a suggestion to the jury that if the victim had fabricated the rape she should have stated that the rape took place at 6:00 p.m. when the defendants admitted having been at the victim's apartment, instead of claiming that the rape took place much later at 10:30 p.m.; (6) a comment in rebuttal summation inquiring as to the whereabouts of "the babysitter" when the defense did not mention "the babysitter" in its closing argument; (7) a comparison of the Pagans to socially acceptable minority groups, thereby allegedly underscoring the reputation of the Pagans as outlaws; and (8) a characterization of defendant Hamilton as a mean person.

■ We have considered all the foregoing contentions and find them without merit as grounds for reversal.

us, as Americans, are called upon for a moment to perform a duty. Literally, many of you were called one particular night and asked to be in Court the next day to perform a duty. In my generation, we were sitting around having beer in a fraternity house, and

seven months later we were diving out of helicopters in elephant grass in Vietnam. But we all performed those duties to the best of our abilities. That is what we have to do. That is our duty.

## VIII

The defense requested that the Trial Judge sequester the jury overnight between the closing arguments and the instructions to the jury and the commencement of jury deliberations the next morning. The Trial Judge denied the request without a statement of reasons and the appellants argue that this constituted an abuse of discretion.

▆▆▆▆▆ In this State, absent a showing of actual prejudice, the refusal of the trial court to sequester the jury prior to deliberation does not constitute an abuse of discretion. *McBride v. State*, Del.Supr., 477 A.2d 174 (1984); *Bailey v. State*, Del.Supr., 363 A.2d 312, 319 (1976), *cert. denied*, 429 U.S. 1072, 97 S.Ct. 809, 50 L.Ed.2d 790 (1977). The defendants contend that the Trial Court was on notice that, prior to trial, there had been extensive news media coverage regarding the incidents here involved and the Pagans in general; and that, therefore, prejudice to the defendants can be assumed. No such presumption is available to the defendants. In order to justify sequestration, "the defendant[s] must [have been] able to make a factual showing of actual prejudice resulting from inflammatory news reports during trial." *Bailey, supra* at 319; *Tyler v. United States*, 5th Cir., 397 F.2d 565 (1968), *cert. denied*, 394 U.S. 917, 89 S.Ct. 1187, 22 L.Ed.2d 451 (1969)." *McBride*, 477 A.2d at 193.

▆▆▆ The defendants made no effort to show prejudice. After closing arguments and before he dismissed the jury for the night, the Trial Judge admonished the jurors not to discuss the case or read any media reports. The next morning the Trial

Judge confirmed that each juror had complied with his admonition. The defendants failed to bring to the Court's attention any media reports issued during the night which could have caused prejudice. *Cf. Hughes v. State*, Del.Supr., 437 A.2d 559, 576–79 (1981).

Accordingly, we find no reversible abuse of discretion in the denial of sequestration.

## IX

The defendants filed a Motion for New Trial and investigation of a certain juror on the basis of a newspaper article which appeared two days after the jury rendered its verdict. In the article, a woman juror was reported as stating that, at the start of the trial, the defendants stared at the members of the jury and the juror interpreted this as an attempt at intimidation; however, she said, two days into the trial the staring stopped. The Superior Court denied the Motions.

The courts have long condemned post-verdict questioning of jurors because of the potential for harassment and intimidation. *Stein v. New York*, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed.2d 1522 (1953). D.R.E. 606(b) [11] now prohibits any inquiry into jury deliberations except in the case where a juror is exposed to "prejudicial information" or improper "outside influence." D.R.E. 606(b).

▆▆▆ The Rule does not permit inquiry into a juror's mental processes. *See U.S. v. Brooks*, D.C.Cir., 677 F.2d 907 (1982). Here, the "effect of [the alleged actions of the defendants in court] upon ... [the] juror's mind or emotions ...," D.R.E. 606(b), is not a subject open to

---

11. D.R.E. 606(b) provides:

(b) Inquiry into Validity of Verdict or Indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental pro-

cesses in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

further consideration and not the proper basis of a Motion for New Trial. The juror's statement, as reported, had two components: (1) a recital that she observed the defendants staring; and (2) her interpretation of that action as being intimidation. The juror's interpretation of the alleged demeanor of the defendants and the effect that demeanor had on her in reaching a verdict is precisely the kind of subjective mental processes of jurors that D.R.E. 606(b) was designed to cover.

Accordingly, we find the Trial Judge did not abuse his discretion in refusing to hold an evidentiary hearing as to the reported statement of the juror, or in refusing a new trial.

*     *     *     *     *     *

For the foregoing reasons, the convictions are hereby AFFIRMED.