## DAVID NASTRI *v.* VERMILLION BROTHERS, INC., ET AL.*

| Superior Court | Judicial District of Waterbury | File No. CV940118719S |

Memorandum filed December 1, 1998

*Tinley, Nastri, Renehan & Dost,* for the plaintiff.

*Day, Berry & Howard,* for the defendants.

## I

## INTRODUCTION

SHORTALL, J. The defendants, Forrest M. Haist and Vermillion Brothers, Inc. (Vermillion), have moved to set aside the jury's verdict, claiming, inter alia,[1] that certain statements made in closing argument by counsel for the plaintiff, David Nastri, caused them manifest injury and deprived them of a fair trial.

This case was tried to a jury before the court, beginning on June 10, 1998, and concluding with the jury's verdict on July 17, 1998. The plaintiff alleged that he

---

* An appeal to the Appellate Court by the defendants was filed on January 5, 1999; Appellate Court No. AC 19182. An amended appeal to the Appellate Court by the defendants was subsequently filed on March 29, 1999; Appellate Court No. AC 19182A01. On July 27, 1999, both appeals were withdrawn.

[1] Other claims made in the motion, based on a ruling on evidence, the jury instruction on the special defenses and the invitation to the jury in closing argument to "send a message" to the trucking industry and to defense counsel, were rejected by the court at the close of argument on the defendants' motion on August 28, 1998.

had suffered serious personal injuries due to the negligence of Haist, the individual defendant, in the operation of a tractor trailer truck owned by Vermillion, the corporate defendant. The jury awarded economic damages in the amount of $1,144,489 and noneconomic damages in the amount of $137,500 and found the plaintiff to have been 25 percent negligent in causing the collision between the vehicle he was operating and the defendant's truck.

"The setting aside of a verdict can occur . . . for two general reasons. First, a trial court may set aside a verdict on a finding that the verdict is manifestly unjust because the jury, on the basis of the evidence presented, mistakenly applied a legal principle or because there is no evidence to which the legal principles of the case can be applied. . . . Second, a verdict may be set aside if its result justifies a suspicion that a juror or jurors were influenced by prejudice, corruption or partiality. A trial court's review of a motion to set aside a verdict, therefore, will focus on one or both of the two tests." (Citation omitted.) *Foley* v. *Huntington Co.*, 42 Conn. App. 712, 724–25, 682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397 (1996). The court understands the defendants' remaining claims to implicate both tests.

The defendants, of course, have the burden of proof on their motion. "The burden is on the [defendant] to establish that, in the context of the proceedings as a whole, the . . . arguments were so prejudicial that they deprived him of a fair trial." *Nevers* v. *Van Zuilen*, 47 Conn. App. 46, 51–52, 700 A.2d 726 (1997).

A preliminary issue which applies to both of the defendants' remaining claims is the effect of their failure to move for a mistrial in response to the allegedly improper arguments of plaintiff's counsel. First, the plaintiff has cited no authority, and the court has found

none, for the proposition that the defendants are barred from making their claims in the absence of such a motion. The defendants promptly voiced their objections at the close of the plaintiff's argument, requested curative instructions and excepted to the court's failure to give them. Therefore, the error, if any, was properly preserved and may be raised by this motion to set aside the verdict.

At the same time, it is at least relevant to the court's decision whether such an extreme remedy is required that the defendants did not request its equivalent when they could have during trial. They apparently believed then that curative instructions would have been adequate to remedy any injury although now, in their supplemental memorandum of law dated September 14, 1998, they argue that "[the] [p]laintiff's argument was so inflammatory that no curative instruction could remove the prejudicial impact." "The Connecticut Supreme Court has looked with disfavor on attempts to claim unfair prejudice after an unfavorable verdict by moving to set aside the verdict where there was no prior motion for mistrial. In *Archambeault* v. *Jamelle,* 100 Conn. 690, 124 A. 820 (1924), the defendants claimed that [the] plaintiff's counsel improperly displayed excluded evidence and made improper remarks during closing argument. After a verdict for the plaintiff the defendants moved to set aside the verdict and for a new trial on the grounds that the foregoing misconduct deprived them of a fair trial. The trial court denied the motion. The Supreme Court upheld the decision of the trial court and stated: 'We think that the action of the trial judge was sufficient to avert any harm to defendants in the consideration of the jury on account of these incidents, especially in view of the fact that it does not appear from the finding that [the] defendants' counsel considered the matters of sufficient importance to then move for a dismissal of the jury from further consideration of the case. That was the proper time and method,

rather than to first take the chance of a favorable verdict by the jury.' [Id.], 695. In the following cases the Court also cited the failure to previously move for a mistrial as one basis on which to deny a motion to set aside the verdict on the grounds of prejudicial conduct: *Furber* v. *Trowbridge*, 117 Conn. 478, 169 A.2d 43 (1933); *Altieri* v. *Peattie Motors, Inc.*, 121 Conn. 316, 321, 185 A.2d 75 (1936); *Ferino* v. *Palmer*, 133 Conn. 463, 465–66, 52 A.2d 433 (1947); *Jacek* v. *Bacote*, 135 Conn. 702, 706, 68 A.2d 144 (1949)." *Miller* v. *Sherwin-Williams Co.*, Superior Court, judicial district of Middlesex, Docket No. CV930067675S (April 10, 1995) (*Aurigemma, J.*).

While the court does not consider that the defendants have waived their right to raise these issues, it will consider their failure to move for a mistrial as one factor in determining the necessity of a new trial to remedy the injury of which they complain.

## II

### THE "GOLDEN RULE" ARGUMENT

At the close of his first argument to the jurors, the plaintiff's counsel, in suggesting a method for measuring noneconomic damages, asked the jurors to imagine themselves holding a job which consisted of "be[ing] David Nastri," with all of the damages counsel claimed the evidence showed, and to "[t]hink about [what] someone would have to pay you to assume his lifestyle on a yearly basis, then multiply that times 37.9 years, and that's how you'll come up with your appraisal of what the noneconomic component of this case is worth." The defendants objected at the conclusion of the argument, characterized it as a "golden rule" argument and requested that the court tell the jurors not to place themselves in the shoes of the plaintiff in deciding this case. The court declined to do so and instructed the jurors that "sympathy for . . . any of the parties

in this lawsuit has absolutely no place whatever in this case. [This] consideration may not influence your deliberations in any way." The court further instructed the jurors that they were free to disregard the suggestion of the plaintiff's counsel as to this approach to measuring damages, characterizing it as "not evidence itself but only arguments." The court concluded by telling the jurors they were "free to disregard any suggested approach in whole or in part as you see fit."

A golden rule argument is one that "urges jurors to put themselves in a particular party's place . . . or into a particular party's shoes." (Citation omitted.) *Walton* v. *Manchester*, 140 N.H. 403, 406, 666 A.2d 978 (1995). Or, as a Connecticut commentary puts it, a request that "jurors award such damages to the plaintiff as they would like to be awarded if similarly situated." J. Fitzgerald & R. Yules, 6 Connecticut Practice Series: Connecticut Trial Practice (1987) § 9.18, p. 273 n.6. Such arguments are improper "because they encourage the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." (Internal quotation marks omitted.) *Walton* v. *Manchester*, supra, 406. They have also been equated to a request for sympathy. *Delaware Olds, Inc.* v. *Dixon*, 367 A.2d 178, 179 (Del. 1976).

The only Connecticut case in which a golden rule argument is discussed is *Begley* v. *Kohl & Madden Printing Ink Co.*, 157 Conn. 445, 452, 254 A.2d 907 (1969). There, our Supreme Court upheld the trial court's refusal to instruct the jury to disregard a golden rule argument made by defense counsel because it was "an offhand remark . . . not stressed" and "there was nothing contained therein to arouse the sympathy of the jurors or inflame their passions."[2] It is clear from

---

[2] The defendants have also cited *Fonck* v. *Stratford*, 24 Conn. App. 1, 4, 584 A.2d 1198 (1991), but the argument made there was a direct invitation to the jury to decide the case on facts outside the evidence and based on their personal interest in the outcome.

*Begley* that not every golden rule argument is cause for a curative instruction or for a new trial in the absence of one.

In ruling on the defendants' objection to this argument, the court analyzed it as an attempt to "concretize damages." While the court adheres to that construction of the plaintiff's argument, having read the cases cited by the parties in their posttrial briefs, the court cannot blink the fact that it comes close to the kind of appeal to sympathy or self-interest found in the typical golden rule argument. It is similar to the argument condemned in *Russell* v. *Chicago, Rock Island & Pacific R. Co.*, 249 Iowa 664, 672, 86 N.W.2d 843 (1957), in which counsel asked how much money the jurors would take to go through life as the plaintiff. Even in a case where the trial court believed, as the court does here, that the word "you," which is sometimes the tipoff to a golden rule argument, was used in an indefinite or hypothetical or generic sense and "was not personally addressed to the members of the jury," the appellate court concluded that "the argument was quite close to the improper borderline, could have been prejudicial, and should not have been permitted." *Phillips* v. *Fulghum*, 203 Va. 543, 549, 125 S.E.2d 835 (1962). Significantly, however, the Supreme Court of Virginia agreed with the trial court's conclusion that, "even if it be assumed that the argument was improper, it was not prejudicial and did not influence the jury to bring in a verdict which was excessive." Id.

That is the case here as well. First, it is important to recall that the argument was addressed only to the jury's calculation of noneconomic damages.[3] The jury's award was $137,500. While not a paltry sum, this is certainly

---

[3] The defendants argue that the reference to the "job" of being Nastri somehow may have affected the jury's assessment of economic damages, which included a claim and an award for lost earning capacity. For the court to so conclude would be rank speculation.

a modest award when it is considered in connection with the award of over one million dollars for economic damages. That award included a very large component for lost economic capacity over the rest of the plaintiff's life expectancy,[4] due primarily to the pain he suffers from recurrent, severe and unpredictable headaches. In addition, he adduced evidence of a permanent disability of the brain, a serious inability to participate in and enjoy the activities of life in which he had engaged prior to the collision, as well as injuries to his neck, shoulders, spine and wrist. This evidence could have formed the basis of an award of noneconomic damages far greater than $137,500.

Furthermore, the plaintiff's argument did not go unremarked upon in the court's instructions. The members of the jury were cautioned in strong terms not to let sympathy play any role in their decision, and golden rule arguments have been analyzed as appeals to the sympathy of the jurors. The jurors were specifically instructed that they were free to disregard the entire argument that was the subject of the defendants' objection. That the jury was not carried away by that argument is shown not only in the amount of their award of noneconomic damages but in their assessment of 25 percent of the responsibility for his damages to the plaintiff, himself.

Therefore, regardless of whether the plaintiff's counsel crossed the line into golden rule territory, the court concludes that the defendants suffered no injury as a result of his argument and were not deprived of their right to a fair trial.

---

[4] The plaintiff claimed medical expenses of approximately $35,000 as economic damages and introduced expert testimony that his lost earning capacity could be valued in the range of $1,276,000 to $1,415,000. The size of the award for economic damages demonstrates that the jury accepted this latter evidence to a substantial degree.

## III

## THE "RAPE" REFERENCE

During his first argument to the jury, the plaintiff's counsel likened defense counsel's tactics at trial to those of "criminal defense lawyers . . . in rape cases," i.e., "they attack the victim." Although defense counsel expressed his "concern" about this allusion at the close of argument, misremembering it as stating that he "represent[ed] a rapist," he requested no curative action on the part of the court. The next day, before deliberations resumed but after the jury had deliberated for about one hour the previous day, counsel renewed his objection and requested that the jury be told that an argument that he was "representing a rapist" was improper and should be disregarded.

The court did not take the plaintiff's argument then, nor does it now, as a reflection on the defendants' character. It was clearly an attack on defense counsel's conduct of the case. As such, it was understandably resented by counsel and, in the court's opinion, was better left unsaid. The question, however, is whether the remarks of the plaintiff's counsel "prejudice[d] the ability of a party to obtain a fair trial . . . ." *Yeske* v. *Avon Old Farms School, Inc.*, 1 Conn. App. 195, 204, 470 A.2d 705 (1984).[5]

In analyzing the closing argument made by counsel for the plaintiff, the court must heed the many cases holding that "some leeway must be afforded to the advocates in offering arguments to the jury in final argument. [I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something

[5] Unlike the alleged golden rule argument, this portion of counsel's argument, if improper, could taint the entire case, not just the question of noneconomic damages.

must be allowed for the zeal of counsel in the heat of argument. . . . [The court] must review the comments complained of in the context of the entire trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Hansen*, 39 Conn. App. 384, 395, 666 A.2d 142, cert. denied, 235 Conn. 928, 667 A.2d 554 (1995).

At the trial and in argument on their motion to set aside the verdict, the defendants place great emphasis on *Yeske*. Suffice it to say that the level of abuse of counsel in *Yeske* was different in kind not just in degree from the single remark made by plaintiff's counsel here. It pervaded the "entire argument," and was considered along with the "courtroom behavior"[6] of the offending counsel during trial in the trial judge's decision to set aside the verdict. *Yeske* v. *Avon Old Farms School, Inc.*, supra, 1 Conn. App. 204.

A case closer to the present one is *Rizzo Pool Co.* v. *Del Grosso*, 232 Conn. 666, 657 A.2d 1087 (1995). In *Del Grosso*, the plaintiff's counsel referred to the defense counsel's argument as "sleaze, slime and innuendo," the likes of which he had never seen in his many years of practice. (Internal quotation marks omitted.) Id., 686–87 n.33. This was only one of the objectionable remarks made by the same counsel not only in closing argument but throughout the trial. The court concluded: "At worst, any prejudice stemming from counsel's comments was minimal. The issues were closely contested by both sides, and the defendants themselves vigorously pursued their claim that the plaintiff had engaged in fraud and deception. In addition, the factual issues were not complicated, and there is little risk that counsel's objectionable remarks created undue confusion in the minds of the jurors. Moreover, the comments were neither so frequent nor so outrageous that they inevitably influenced the jury and, finally, any possible harm to

---

[6] No such claim is made here, nor could it be.

the defendants likely was eliminated by the trial court's clear and emphatic charge to the jury that its verdict was to be based solely on the evidence and not on the remarks of counsel." Id., 688.

The "clear and emphatic charge" given in *Rizzo Pool Co.* v. *Del Grosso*, supra, 232 Conn. 688, which the court found sufficient to dispel any possible prejudice, made no specific reference to counsel's objectionable remarks either in argument or at other points in the trial. It consisted of the same admonitions to the jurors against sympathy and against going outside the evidence to find facts and the same injunctions to base their verdict on the evidence, and not on arguments of counsel, as were given by the court to the jury in the present case.

It is fair to say that the defense in the present case on the issue of damages consisted of a thoroughgoing attack on the credibility and integrity of not only the plaintiff but also his family members who testified, and the expert witnesses who testified in substantiation of his damages claims. No witnesses were offered by the defendants on any of the damages claims. No witnesses were offered by the defendants on any of the damages issues. While that is the prerogative of the defendant in any case, and there is nothing improper in the efforts of these defendants' counsel to conduct their case in this manner, it is in the context of this defense that the sole remark of plaintiff's counsel complained of must be evaluated.[7]

Counsel's attack on opposing counsel's argument in *Del Grosso* was at least as objectionable as the argument complained of here and was part of a pattern, unlike

---

[7] In their memoranda and at argument on their motion to set aside the verdict the defendants attempted to expand their complaint to the references by the plaintiff's counsel to his client as a "victim." The short answer to that attempt is to point out that those remarks were not the focus of their objection at trial, and the court was never asked to take any curative action regarding them.

the single reference here. Nevertheless, noting that "the defendants themselves vigorously pursued their claim that the plaintiff had engaged in fraud and deception"; id.; as did the defendants here, the court in *Del Grosso* found that the "defendants have not demonstrated that they are entitled to a new trial due to the inappropriate remarks of the plaintiff's counsel." Id., 689.[8]

The court reaches the same conclusion here. An appraisal of the "atmosphere prevailing in the courtroom"; *Yeske* v. *Avon Old Farms School, Inc.*, supra, 1 Conn. App. 205; throughout this trial leads the court to conclude that the single remark of the plaintiff's counsel, considered in the context of the case as a whole, was not prejudicial to the defendants. In view of the isolated nature of the remark and of the instructions given, no additional cautionary instructions were required.

The verdict, itself, shows that the jurors were not influenced by "prejudice, corruption or partiality"; *Foley* v. *Huntington Co.*, supra, 42 Conn. App. 724; engendered by this or any other of the arguments complained of by the defendants. This jury deliberated for two full days and parts of two other days. At the conclusion of those deliberations, they returned a verdict which gave full value to the defendants' claim of contributory negligence and provided for compensation in an amount which the defendants do not claim was excessive. This was not a jury swept away by rhetoric.

IV

CONCLUSION

It has long been the law in this state that the jury's verdict should not be set aside and a new trial ordered

[8] Cases on the criminal side of the court have long recognized that otherwise objectionable remarks in closing argument may have been "invited by defense conduct or argument." See, e.g., *State* v. *Satchwell*, 244 Conn. 547, 564, 710 A.2d 1348 (1998).

unless it is apparent that "injustice either was, or might have been, done [at] trial." *Brown* v. *Keach*, 24 Conn. 72, 76 (1855). The verdict's "manifest injustice [must be] so plain as to clearly indicate that the jury has disregarded the rules of law applicable to the case, or were influenced by prejudice, corruption, or partiality in reaching a decision." (Internal quotation marks omitted.) *Robinson* v. *Backes*, 91 Conn. 457, 459, 99 A. 1057 (1917). No such injustice is apparent in the present case. Accordingly, the defendants' motion to set aside the verdict is denied.