**UNITED STATES of America, ex rel., Paul R. HAMILTON, James T. Burke, Paul Morris, Petitioners,**

v.

**John ELLINGSWORTH, et al., Respondents.**

Civ. A. No. 86–528 LON.

United States District Court, D. Delaware.

Aug. 17, 1988.

John Williams and William N. Nicholas of Vaughn and Nicholas, Dover, Del., for petitioners.

Loren C. Meyers, Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for respondents.

## OPINION

LONGOBARDI, District Judge.

The Petitioners, Paul Hamilton, James Burke and Paul Morris (hereinafter the "Petitioners"), petition this Court for habeas corpus relief based upon violations of

their constitutional rights arising out of their trial for the rape of Karron Reed (hereinafter "Reed" or "Victim").[1] At the trial, Reed testified that in April, 1982, the Petitioners raped her, violated her with a beer bottle and abused her in other ways. The State also called Sandy Lepkowski ("Lepkowski") to corroborate part of Reed's testimony and to testify against the Petitioners. Prior to the trial, Lepkowski made several statements: (1) the day after the rape, when Lepkowski brought Reed to Wilmington Medical Center, Lepkowski gave statements to the police and to a social worker; (2) the next day Lepkowski gave a tape recorded statement to the police; (3) some time later, in the presence of the Petitioners and their counsel, Lepkowski signed an affidavit indicating that the story about the rape was fabricated; and (4) in January, 1983, Lepkowski repeated her original story about the rape to FBI agents and explained that the recantation in the affidavit signed before the Petitioners was false. Prior to the trial in 1983, but after all of the aforementioned statements, Lepkowski was involved in a car accident and hospitalized for several days. As a result of the accident, Lepkowski, at trial, was unable to remember the victim, the events surrounding the rape or the statements she made. Relying on 11 Del. C. § 3507, the State offered into evidence (1) through the testimony of the police officer and the social worker, the prior oral statements made by Lepkowski at the hospital; (2) through the testimony of the chief investigating officer, a transcript of the tape recorded statement Lepkowski made to the police two days after the rape; and (3) through the testimony of an FBI agent, the oral statement Lepkowski made concerning the rape and the events surrounding the recantations.

Following the presentation of all the evidence, the jury found the Petitioners guilty of first degree rape and first degree conspiracy. Each Petitioner was sentenced to life imprisonment for rape and to ten years for conspiracy. The Petitioners appealed their convictions and the Delaware Supreme Court affirmed the trial court. *Burke v. State*, Del.Supr., 484 A.2d 490 (1984). The Petitioners bring this habeas corpus petition arguing that (1) the admission of Lepkowski's prior statements denied them their sixth amendment right to confront the witness and (2) the prosecutor's closing summation violated their constitutional right to due process of law.

The Petitioners raise several objections to the Magistrate's Report and Recommendation. Initially, the Petitioners dedicate twenty-five paragraphs to pointing out factual discrepancies that they believe exist in the Magistrate's statement of facts. Since the habeas corpus petition in fact asks this Court to address issues involving the Confrontation Clause and the Petitioners' right to due process, the detailed objections to the Magistrate's statement of facts surrounding the crime is of little importance. Even if this Court were to agree with the Petitioners and rewrite the statement of facts to address all of their concerns, it would not change the outcome of this petition. Consequently, the objections to the statement of facts in the Magistrate's Report and Recommendation are of little moment.[2]

## PETITIONERS' RIGHT TO CONFRONT THE WITNESSES

■ The Petitioners' second set of objections addresses the Magistrate's resolution of the sixth amendment claim. Although the Petitioners do raise some factual disputes, the main body of their objections go

---

**1.** The Petitioners' habeas corpus petition was originally referred to the Magistrate. After extensive briefing, the Magistrate issued his Report and Recommendation ("Report and Recommendation"). Docket Item ("D.I.") 23. Following the Report and Recommendation, the Petitioners filed Petitioners' Objections to the Magistrate's Report and Recommendation ("Petitioners' Objections"), D.I. 27, and the State responded with its Response to Objections to

Report and Recommendation ("Response to Objections"), D.I. 29. Since this Court is reviewing the Report and Recommendation on a *de novo* basis, the Report and Recommendation shall form the framework for this Court's discussion.

**2.** A more detailed discussion of the facts may also be found in *Burke*, 484 A.2d at 493.

to the Magistrate's conclusion that their sixth amendment right to confrontation was not violated by the introduction of the out-of-court statements made by a witness who was suffering from amnesia at trial. *See* D.I. 23 at 6–7. The Petitioners object to the Magistrate's reliance upon *United States, ex rel. Thomas v. Cuyler*, 548 F.2d 460 (3rd Cir.1977), and his analysis of Supreme Court precedent surrounding this issue, including the Magistrate's understanding of the Supreme Court's disposition of *U.S. v. Owens*, 789 F.2d 750 (5th Cir.1986), *rev'd, U.S. v. Owens*, —— U.S. ——, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988). D.I. 27 at 14–20. In essence, the Petitioners "object to the equation on page 14 in the Magistrate's Report that merely making an adverse prosecution witness available for cross-examination at trial satisfies the demands of the Sixth Amendment confrontation guaranty." *Id.* at 21.

The Supreme Court has recently laid to rest the issue left open in *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), and in *Delaware v. Fensterer*, 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (per curiam), and the issue raised by the Petitioners. In *U.S. v. Owens*, —— U.S. ——, 108 S.Ct. 838, 98 L.Ed.2d 951, the Supreme Court reaffirmed Justice Harlan's view on this issue by concluding that the Confrontation Clause only guarantees an opportunity for effective cross-examination. *Id.* 108 S.Ct. at 842. As a result, the Supreme Court stated that the opportunity for effective cross-examination is not denied when a witness,

> testifies as to his current belief but is unable to recollect the reason for that belief. It is sufficient that the defendant has the opportunity to bring out such matters as the witness's bias, his lack of care and attentiveness, his poor eyesight, and even ... the very fact that he has a bad memory. If the ability to inquire into these matters suffices to establish the constitutionally requisite opportunity for cross-examination when a witness testifies as to his current belief, the basis for which he cannot recall, we see no reason why it should not suffice when the witness's past belief is introduced

> and he is unable to recollect the reason for that past belief.

*Id.* at 842 (citations omitted). The Supreme Court also pointed out that "when a hearsay declarant is present at trial and subject to unrestricted cross-examination", the out-of-court testimony need not be examined for "indicia of realiability" as the Ninth Circuit had required. *Id.* at 843. Rather, "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness's demeanor satisfy the constitutional requirements." *Id.*, citing *Green*, 399 U.S. at 158–61, 90 S.Ct. at 1935–37.

In light of *Owens*, this Court must conclude that the Magistrate's analysis of the issue is correct. Since the Third Circuit relied upon Justice Harlan's language in deciding *Cuyler* and since this is the same position adopted by the Supreme Court in *Owens*, the Magistrate's reliance upon *Cuyler* and his analysis is not in error. Furthermore, his conclusion that the Confrontation Clause is satisfied if the witness is made available is the holding in *Owens*. As a result, this Court must conclude that the Magistrate's resolution of the Petitioners' sixth amendment claim is the correct one because his analysis of this issue is in accordance with the Supreme Court's decision in *Owens*. Finally, since this Court agrees that there was no sixth amendment violation, this Court cannot find that 11 Del.C. § 3507, which permitted the introduction of the out-of-court statements, is unconstitutional as applied to the Petitioners.

### PETITIONERS' RIGHT TO DUE PROCESS OF LAW

The Petitioners raise many objections to the Report and Recommendation. Several of the objections go to the standard of review used by the Magistrate to resolve the Petitioners' due process claim. D.I. 27, ¶¶ 39, 40 and 46. These will be dealt with initially. The remaining objections will be dealt with *seriatim* as raised by Petitioners.

#### Standard of Review

In order to determine whether the statements made in the prosecutor's closing re-

marks violated the Petitioners' right to due process of law, the Magistrate relied on the standard established in *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). The Petitioners maintain that the Magistrate erred because he ignored due process standards announced in *Berger v. United States,* 295 U.S. 78, 89, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935); *Dunlop v. United States,* 165 U.S. 486, 498, 17 S.Ct. 375, 379, 41 L.Ed. 799 (1897); *Sawyer v. United States,* 202 U.S. 150, 167–68, 26 S.Ct. 575, 580, 50 L.Ed. 972 (1906); *U.S. v. Socony–Vacuum Oil Co.,* 310 U.S. 150, 243, 60 S.Ct. 811, 853, 84 L.Ed. 1129 (1940); or *Singer v. U.S.,* 380 U.S. 24, 38, 85 S.Ct. 783, 791, 13 L.Ed.2d 630 (1965). D.I. 27 at 23–24.

In *Donnelly,* the court was presented with a due process claim because a prosecutor, during closing arguments, commented on the accused's motives for standing trial. *Donnelly,* 416 U.S. at 642, 94 S.Ct. at 1871. It was argued that the jury could infer from the statement the accused had sought to plead guilty to a lesser offense but had, in fact, been refused. *Id.* In holding that the prosecutor's comment did not violate the accused's right to due process, the Supreme Court explained that,

> the prosecutor's remark here, admittedly an ambiguous one, was but one moment in the extended trial and was followed by specific disapproving instructions. Although the process of constitutional line drawing in this regard is necessarily imprecise, we simply do not believe that this incident made respondent's trial fundamentally unfair as to deny him due process.

*Id.* at 645, 94 S.Ct. at 1872.[3] The standard established in *Donnelly* has been subsequently reiterated in *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). In that case, the Supreme Court stated that the question in reviewing the comments by a state prosecutor is not whether they are condemnable but "the relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden,* 477 U.S. at 181, 106 S.Ct. at 2472, quoting *Donnelly,* 416 U.S. at 645, 94 S.Ct. at 1872. As set forth by the Supreme Court, therefore, the standard by which the court in a habeas corpus petition must review a prosecutor's comments is whether, in the context of the trial as a whole, they were of such a nature as to render the trial fundamentally unfair.

The Third Circuit has also addressed this issue. In *United States ex rel. Perry v. Mulligan,* 544 F.2d 674 (3rd Cir.1976), *cert. denied,* 430 U.S. 972, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977), the court explained that in habeas corpus petitions where the petitioner contests remarks made by the state prosecutor during the course of the trial, the court's "review of the state court proceedings is narrow for 'not every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a "failure to observe that fundamental fairness essential to that very concept of justice."'" *Ex rel. Perry,* 544 F.2d at 678, quoting *Donnelly,* 416 U.S. at 642, 94 S.Ct. at 1871. The court recognized that not every error which could call for the exercise of the court's supervisory power is an error which would amount to a constitutional violation. *Cf. United States v. Scarfo,* 685 F.2d 842, 849 (3rd Cir.1982), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983). The Third Circuit continued to explain:

> If it is contended that the prosecutor's remarks so prejudiced a specific right guaranteed by the Bill of Rights as to amount to a denial of that right, then the court takes special care to assure that no

---

**3.** The determination of whether a prosecutor's comment violated an accused's right to due process must be evaluated in the context of the entire trial. The Supreme Court framed the question presented and its resolution thereof as: "[H]ere the claim is only that a prosecutor's remark about respondent's expectations at trial itself so infected the trial with unfairness as to make the resulting conviction a denial of due process. We do not believe that examination of the entire proceedings in this case supports this contention." *Donnelly,* 416 U.S. at 643, 94 S.Ct. at 1871.

impermissible infringement has taken place. However, in other situations, the test is whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process.

*Ex rel. Perry*, 544 F.2d at 678, citing *Donnelly*, 416 U.S. at 643, 94 S.Ct. at 1871. Thus, where a prosecutor's comments do not prejudice a specific right guaranteed by the Bill of Rights, the comments made will violate a party's right to due process only if they, in the context of the trial as a whole, rendered the trial fundamentally unfair. *See Scarfo*, 685 F.2d at 849. Contrary to the Petitioners' argument that there are other standards which a court may apply when determining whether prosecutorial misconduct amounts to a denial of due process, it is clear that the test in this Circuit, as well as others, is whether the comments made rendered the Petitioners' trial fundamentally unfair. *See, e.g., Bell v. Lynaugh*, 828 F.2d 1085 (5th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 310, 98 L.Ed.2d 268 (1987); *Davis v. Kemp*, 829 F.2d 1522 (11th Cir.1987); *Malley v. Manson*, 547 F.2d 25 (2nd Cir.1976), *cert. denied*, 430 U.S. 918, 97 S.Ct. 1335, 51 L.Ed. 2d 598 (1977).

The Petitioners cite several cases which they argue the Magistrate should have considered in fixing the standard for determining a violation of due process by prosecutorial misconduct. D.I. 27 at 23. In *Dunlop*, the court considered the prosecutor's improper remark cured because the trial court intervened and the district attorney immediately withdrew it. *Dunlop*, 165 U.S. at 498, 17 S.Ct. at 379. In *Sawyer*, the Supreme Court saw nothing further that could have been done where the trial court held a prosecutor's comment improper and it was immediately withdrawn and apologized for; thus, the verdict was not set aside. *Sawyer*, 202 U.S. at 167–68, 26 S.Ct. at 580. In *Berger*, the Supreme Court found the prosecutor's comments highly prejudicial because the case against

Berger, after a review by the Court, was considered weak and the prosecutor's misconduct was considered "pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential." *Berger*, 295 U.S. at 89, 55 S.Ct. at 633. In *Secony–Vacuum Oil Co.*, the prosecutor's comments, which appealed to passion and prejudice, did not constitute prejudicial error because, due to the length of the trial, the court found it difficult to imagine the jurors improperly influenced by the comments made and because the case against the defendant was not a weak one as in *Berger*. *Socony–Vacuum Oil Co.*, 310 U.S. at 239, 60 S.Ct. at 851.[4] The last case cited by Petitioners is *Singer*. Here, in a passing paragraph, the Supreme Court found that the prosecutor's comments did not violate the accused's right to due process because the misconduct, if there were any, was not purposeful nor flagrant and the trial court's admonition to the jury ameliorated any prejudicial impact the remarks may have had. *Singer*, 380 U.S. at 38, 85 S.Ct. at 791. The Petitioners contend that these cases set forth due process clause standards which should have been considered. D.I. 27 at 23.

Rather than considering these cases as setting forth several standards in addition to that set forth in *Donnelly* and reaffirmed in *Darden*, they should be considered as providing factors which may be considered in determining if a prosecutor's misconduct violates an accused's right to due process. The standard applied in *Donnelly* by the Supreme Court is the broader standard under which the cases cited by the Petitioners fall as factors which a reviewing court may consider in determining whether the alleged conduct, in the context of the entire trial, did, in fact, render the trial unfair. Thus, as an example, if a reviewing court were presented with a habeas corpus petition involving a weak case against the petitioner and persistent, prejudicial comments by a state prosecutor, the

---

**4.** Interestingly, the Supreme Court noted that "where, as here, the record convinces us that these statements were minor aberrations in a prolonged trial and not cumulative evidence of a proceeding dominated by passion and prejudice, reversal would not promote the ends of justice." *Socony–Vacuum Oil Co.*, 310 U.S. at 240, 60 S.Ct. at 852.

court could consider these factors in determining whether to grant relief. *See, e.g.,* *Berger,* 295 U.S. at 89, 55 S.Ct. at 633. Alternatively, a reviewing court should also consider such factors as the length of a jury trial and the strength of the case against the petitioner in making its decision. *Socony–Vacuum Oil Co.,* 310 U.S. at 239, 60 S.Ct. at 851. These are factors that the reviewing court will consider when it evaluates the prosecutor's comments in the context of the trial as a whole. As a result, the Magistrate was correct in relying upon *Donnelly* as the standard for reviewing the Petitioners' request for habeas corpus relief on the issue of prosecutorial misconduct. The Petitioners incorrectly urge that the cases they rely upon set forth alternative due process standards. That argument is rejected. Rather, these cases set forth factors which may be considered when applying the due process standard.[5]

*Blood Stained Bottle*

■ Having concluded that the standard announced in *Donnelly* is the correct standard to be applied to this habeas corpus petition, this Court will now turn to the objections raised to the prosecutor's various comments and evaluate them accordingly. The Petitioners argue that the prosecutor misstated Reed's testimony by telling the jury that Reed said that one of the Petitioners said that Reed was bleeding when, in fact, she did not so testify.[6] The Petitioners contend that they were able to call into question the truthfulness of Reed's entire story because, while she testified she was bleeding, there was no blood on the beer bottle which was used in the assault. D.I. 19 at 82–83. The prosecutor's characterization of Reed's testimony, therefore, undermined the Petitioners' theory of the case, thus violating their right to due process. The Magistrate found not only that Reed's testimony was indefinite but also that the defense counsel informed the jury of his version of her testimony. D.I. 23 at 16. The Magistrate concluded, therefore, that this statement did not violate the Petitioners' constitutional rights. *Id.* at 17.[7] The Petitioners object to the

---

5. The Petitioners initially adopted the position which this Court has just enunciated; however, in their Objections to the Magistrate's Report and Recommendation, they advance the new theory that the cases they cite set forth other due process clause standards. *Compare* D.I. 19 at 94–96 with D.I. 27 at 23.

6. In his closing argument, the prosecutor said: I mean there was no blood on the bottle, no semen on the bottle. Don't let the defendants put the cart before the horse. There has to be blood first in order for you to find blood. Who said there was blood? Quiet said there was blood, not the victim. She said Quiet said, "You are bleeding", not Dr. Loken. She says, "You are not bleeding." But the defendants now want you to say, "Yeah, she was bleeding, and because she was bleeding, that bottle would have had blood on it." Don't put the cart before the horse. Don't let them do that."
Transcript, ("Tr."), D.I. 9B, Volume ("Vol.") I at 41.

7. The Magistrate stated that "[t]he Court cannot infer that the jury, when presented with differing claims in closing argument as to what the victim said, collectively failed to use their own recollection and drew an erroneous interpretation damaging to the defense." D.I. 23 at 17. Obviously, the Magistrate was drawing on the remarks made by the Supreme Court in *Donnelly,* 416 U.S. at 647, 94 S.Ct. at 1873. The Su-

preme Court instructed the lower court not to quickly infer the most damaging meaning of an ambiguous remark made to a jury during a lengthy trial. *Id.* This instruction, however, has significance only in the context of the standard set forth in *Donnelly.* The Supreme Court was explaining that its examination of the prosecutor's remarks in *Donnelly* was not a retreat from the line of cases that prohibited the obtaining of a conviction through false evidence. *Id.* at 646, 94 S.Ct. at 1872. The Court pointed out that an isolated passage of a prosecutor's argument does not reach the same proportions as the use of false evidence. *Id.* Because of events that make up a closing argument, the court cautioned lower courts against inferring an error of prejudicial proportions from ordinary trial error. *Id.* The Supreme Court was not setting forth a test to be applied to habeas corpus petitions alleging a due process violation due to prosecutorial misconduct. The court made it clear that the standard was whether the comments, in the context of the trial as a whole, rendered the trial fundamentally unfair. *Id.* at 645, 94 S.Ct. at 1872. The court was, however, explaining that it was not backing away from an established line of cases finding a constitutional violation. Rather, the court took the position that the standard applied in *Donnelly* will retain the distinction between "ordinary trial error of a prosecutor and that sort of egregious conduct" that will violate an accused's constitutional right to due process. Thus, while the Magistrate may

Magistrate's characterization of Reed's testimony as "a bit indefinite" and object to the inference that when a prosecutor misstates something, the misconduct is resolved when the defense counsel has the opportunity to express his understanding of the testimony. D.I. 27 at 13, citing Berger, *295 U.S. at 88, 55 S.Ct. at 633. This Court agrees with the Magistrate that Reed's testimony at trial, both on direct and cross, is somewhat unclear as to what is said and meant.*[8] *Furthermore, whether or not the Magistrate is implying that the prosecuting and defense attorney are on equal footing is not the question. Rather, the issue is whether the prosecutor's comment as to Reed's testimony, in the context of the trial as a whole, was sufficiently prejudicial so as to render the trial fundamentally unfair.*

In the context of the trial as a whole, this Court believes that the prosecutor's comment did not render the trial fundamentally unfair. The trial lasted eight days and the jury heard volumes of testimony. The Petitioners were confronted with testimony from the victim, which was corroborated in part by the admissible testimony of Lepkowski. (*See* discussion *supra.*) Furthermore, the State presented the testimony of one expert who testified to the presence of semen and urine on the couch, although she was unable to attribute either sample to a specific individual. Tr., D.I. 9B, Vol. F at 10–11. This same expert also testified to the presence of a substance in the beer bottle allegedly used in the rape. *Id.* at 14. This substance, however, did test negative as to blood and semen and the expert testified that the laboratory for the Federal Bureau of Investigation where she works

did not have a reliable test to identify a vaginal secretion. *Id.* A second expert who examined pubic and head hair samples gathered from the crime scene was able to place two of the Petitioners at the scene of the rape. *Id.* at 31–32. Needless to say, the defense put forward its own evidence which included, *inter alia,* its own expert to refute the State's experts (Tr., D.I. 9B, Vol. H at 83); a witness who gave his explanation for the presence of bruises on the victim (Tr., D.I. 9B, Vol. F. at 150); and even an alibi witness who was unassociated with the Petitioners (Tr., D.I. 9B, Vol. G at 95). While the Court recognizes that this recitation of the evidence presented by either side is not exhaustive, it is representative. In light of the evidence presented, the Court is unwilling to characterize the State's case against the Petitioners as weak. Furthermore, the defense counsel was able to explain to the jury his characterization of Reed's testimony. Tr., D.I. 9B, Vol. I at 57–58. While the Court appreciates the weight the prosecuting attorney's comments may carry with the jury, *Berger,* 295 U.S. at 88, 55 S.Ct. at 633, the Court still must evaluate the comment made in the context of the trial as a whole. Part of this context includes the fact that the defense counsel was able to put his own gloss on the ambiguous testimony. Finally, although the trial court did not find the prosecutor's comment outside the bounds of proper argument, the court made a point of informing defense counsel that the jury would be charged that they are to decide the case on the evidence only, and did so. Tr., D.I. 9B, Vol. J at 6–7. When the prosecutor's comment regarding Reed's testimony is considered in light of

---

have reached the correct result, the test under *Donnelly* may not have been articulated so clearly.

8. Reed's testimony on direct is as follows: "Q. What, if anything, did they do with your blouse? A. They took it. They took—when Quiet was on top of me—I mean—I was bleeding and I think it was Quiet that said she was bleeding and he picked up my shirt and he wiped the blood from me." Tr., D.I. 9B, June 13, 1983, at 22.

On cross-examination, the questioning and answers were as follows:

Now, Miss Reed, you testified this morning that during the course of this event you were bleeding? A. Right. Q. Were you having your menstrual period at that time? A. I think it was beginning, yes. Q. I know you are not a doctor, but the blood was from your menstrual period? A. That or from the beer bottle. I am not sure.
*Id.* at 34–35. On the sterile record before this Court, without the benefit of seeing and listening to the witness, it is difficult to determine the meaning of what she said. Consequently, it seems prudent to leave such an issue to the province of the jury.

the aforementioned facts and in the context of the trial as a whole, this Court is unable to say that it was so prejudicial as to render the Petitioners' trial fundamentally unfair.

### Subpoenaed Witness

■ The Petitioners next object to the Magistrate's recommendation as to the prosecutor's comment about the voluntary presence of Reed and Lepkowski.[9] At trial, the Petitioners attempted to prove that the rape story was fabricated by Reed and Lepkowski. D.I. 19 at 84. The Petitioners argue before this Court that the prosecutor's comment bolsters the witnesses' credibility by implying that they appeared voluntarily. *Id.* In point of fact, the Petitioners argue, Lepkowski was under subpoena by the State. *Id.* The Magistrate found the comment at issue ambiguous. D.I. 23 at 17. The Magistrate concluded that whether or not the statement was false, it would be frivolous to find that the jury would draw an inference adverse to the Petitioners since the comment was made about a witness who revealed to the jury that she had little, if any, recollection of the events at issue. *Id.* The Petitioners object to the conclusion that the testimony is ambiguous and that it is "permissible for a prosecutor to make an 'arguably false statement' to the jury in summation because the circumstances surrounding the testimony of the witness about whom the statement was made would lead the jury to disregard the statement." D.I. 27 at 23.

This Court must agree with the result reached by the Magistrate. The prosecutor's comment followed the defense counsel's summation. Defense counsel tried to paint a picture for the jury of Reed and Lepkowski fabricating this story about the rape and that, as a result, the two were now in way over their heads. Tr., D.I. 9B, Vol. I at 66, 88–91, 95–96, 98–99. It is in this context that the prosecutor asked the jury to consider, among other things, that their willingness to testify after so long a time together with the absence of the blouse and the question about when the urine stain could have been placed at the scene of the crime was corroborated and that their story was not a fabrication. Tr., D.I. 9B, Vol. I at 105. This Court must agree with the Magistrate that, at the very least, the prosecutor's comment is ambiguous.[10] D.I. 19 at 84. When faced with an ambiguous statement, this Court should not be quick to infer its most damaging meaning. *Donnelly,* 416 U.S. at 647, 94 S.Ct. at 1873. Thus, after considering the evidence presented at trial, the Supreme Court's admonition that a reviewing court should not lightly infer "that a jury, sitting through lengthy exhortation, will draw [the most damaging] meaning from the plethora of less damaging interpretations", *id.,* and the statement in the context of the trial as a whole, this Court finds that the prosecutor's comment did not render the Petitioners' trial fundamentally unfair.

### Alibi Witness

■ The Petitioners next object to the Magistrate's recommendation regarding the prosecutor's comment about the Petitioners' alibi witness. At the trial, the defense presented Brian McCarthy ("McCarthy"), an alibi witness, who was not acquainted with the Petitioners and who testi-

---

9. During his rebuttal closing argument, the prosecutor, in attempting to deal with an argument posed by defense counsel, stated:

"The girls outsmarted themselves." Now, think about that. They have outsmarted themselves. If these girls are so smart—that's two young girls—to set this thing up, number one, why would they go through this a year after? Why would they keep this going? They didn't have to come here. Why would they do that if they are so smart to set this up? When did they deposit the urine? And while they were there depositing the urine, why didn't they leave that torn blouse and that ripped shirt? That would have helped a whole hell of a lot. Why didn't they leave that?

Tr., D.I. 9B, Vol. I at 105.

10. The ambiguity of this statement is revealed in the several interpretations uncovered by this Court. The Magistrate stated that it was unclear as to what the prosecutor was referring. D.I. 23 at 17. The State, on the other hand, characterized the comment as the prosecutor "contending that their mere presence at trial deflected any notion that they had cleverly created the entire affair." D.I. 29, ¶ 13. Alternatively, the sentence "they didn't have to come here" could be interpreted to mean that they did not have to come here to testify to this story.

fied that they were at the Finish Line Tavern at the time the rape occurred. Tr., D.I. 9B, Vol. G at 95–101. When commenting about McCarthy during his closing argument, the prosecutor urged the jury to use their common sense in evaluating McCarthy's testimony. Tr., D.I. 9B, Vol. I at 38. The prosecutor told the jury that if McCarthy said, as he testified, that one of the Defendants was obnoxious and loud, "this guy [meaning one of the Defendants] would have chewed him up and spit him out if he said anything like that." *Id.* During the defense's closing argument, defense counsel was able to explain to the jury his understanding of McCarthy's testimony by explaining that McCarthy did not speak to any of the Petitioners but he spoke to the owner of the tavern. Tr., D.I. 9B, Vol. I at 75, 76.

The Petitioners contend that the prosecutor misstated and mischaracterized facts in the record and urge that this Court require a new trial. D.I. 19 at 86–87. The Magistrate recognized that the prosecutor mischaracterized McCarthy's testimony. D.I. 23 at 18. However, in light of the fact that defense counsel informed the jury as to his recollection of McCarthy's testimony, the Magistrate concluded that the court could not lightly infer that the jury would accept the most damaging version when presented with different versions of the witness' testimony in closing argument. *Id.* The Petitioners object to the conclusion that there is no prejudice from a prosecutor's mischaracterization of testimony when a defense attorney corrects any error in his closing argument. D.I. 27 at 24.

This Court agrees with the Magistrate's conclusion that the prosecutor's characterization of McCarthy's testimony is not grounds for granting habeas relief. The question for this Court is whether the prosecutor's characterization of McCarthy's testimony, in the context of the trial as a whole, rendered the trial fundamentally unfair. The jury heard the witness' testimony which takes up seven pages in trial transcript. Tr., D.I. 9B, Vol. G at 95–101. The thrust of McCarthy's testimony was to place the Petitioners at the Finish Line Tavern from approximately 9:00 p.m. to

12:00 a.m. or 1:00 a.m. on the night that the rape occurred. *Id.* at 96–99. The prosecutor's comment did not address this part of the witness' testimony. In an attempt to urge the jury to assess the credibility of the witness, the prosecution focused on McCarthy's remarks about the behavior of the Petitioners on the night he testified he saw them. The jury, however, heard from the witness himself that he made this remark to the owner of the tavern. *Id.* at 98–99. Furthermore, the defense counsel was able to explain to the jury his recollection of McCarthy's testimony. Tr., D.I. 9B, Vol. I at 75–76. Finally, the instructions given to the jury did remind them that they were the sole judges of the facts in the case. Tr., D.I. 9B, Vol. J at 7. Thus, while the prosecutor's comment may be considered improper, it did not mischaracterize the essence of McCarthy's testimony; rather, the comment attempted to urge the jury to consider the witness' credibility. The jury, the final arbiter of just such an issue, heard the witness' testimony and was reminded of it by defense counsel. Consequently, in the context of the trial as a whole, this Court finds that the prosecutor's characterization of McCarthy's testimony, while improper, did not render the Petitioners' trial fundamentally unfair.

*Juror Hairs*

The Petitioners next challenge the prosecutor's comment to the jury asking them to look at their seats to see if any head hairs were present. Through the use of expert testimony, the State placed Petitioners Hamilton and Morris at the apartment where the rape occurred because of hairs that were found there. Tr., D.I. 9B, Vol. F at 31–32. The expert was unable to match any hairs found at the apartment with those of Petitioner Burke. *Id.* at 36. The expert also testified that an individual loses approximately one hundred head hairs a day. *Id.* at 48–49. Based upon this and the Petitioners' own expert's testimony, defense counsel, in his closing remarks, argued to the jury that the absence of Burke's hair was consistent with Burke's testimony of the facts as to the night in question. Tr., D.I. 9B, Vol. I at 94–97. It

was in response to this issue that the prosecutor made the statement in question. During his rebuttal summation, the prosecutor turned to the jury and told them that there were no hairs on the chairs in which they sat.[11] Tr., D.I. 9B, Vol. I at 104. He asked them to use their common sense in evaluating defense counsel's closing discussion and the inference to be drawn from the absence of Burke's hair in the apartment. *Id.* The Petitioners contend, both in their opening brief and in their response to the Magistrate's Report, that they were prejudiced by the prosecutor's highly speculative analogy. D.I. 19 at 88–89; D.I. 27 at 24. It was nevertheless related to expert testimony explaining the absence of such hair at the scene. (*See infra* at 366.) The Magistrate agreed with the Petitioners that the prosecutor referred to facts not in evidence but concluded that it was unlikely the jury drew a damaging inference against the Petitioners from this remark. D.I. 23 at 19.

While this Court agrees with the Magistrate's conclusion that there was no constitutional violation, the analysis needs more development. The Petitioners argue that the prosecutor's comment denied them their right to be tried solely on the basis of the evidence presented to the jury. D.I. 19 at 89; D.I. 27 at 24, citing *United States v. Young,* 470 U.S. 1, 18, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1 (1985). The Petitioners do not contend, however, that this right is a *specific* right guaranteed by the Bill of Rights. Nor was this Court directed to any case law in support of such a proposition. Since this right is not specifically protected by the Bill of Rights, the Petitioners' claim

must be evaluated under the standard applicable to a claim of denial of due process. *Donnelly,* 416 U.S. at 643, 94 S.Ct. at 1871; *United States ex rel. Perry,* 544 F.2d at 677. Clearly, the prosecutor told the jury in his rebuttal summation, "There is not one hair on any of those chairs, your hairs." Tr., D.I. 9B, Vol. I at 104. In the context of this one paragraph out of 111 pages of closing argument by both sides, it is clear that the prosecutor was urging the jury to use their common sense in evaluating the significance of not finding any of Burke's hair at the scene of the crime. *Id.* at 104–05. The defense counsel, furthermore, during his summation emphasized the significance of the absence of such hair. *Id.* at 96–97. During the course of the trial, the jury was also presented with expert testimony regarding the conclusions to be drawn from the presence or absence of each Petitioner's hair at the apartment where the rape occurred. On cross-examination, the State's expert testified that he was not surprised not to find any of Petitioner Burke's hair. Tr., D.I. 9B, Vol. F at 54. The Petitioners put forward their own expert who testified that he did not necessarily agree with the State's expert on this issue. Tr., D.I. 9B, Vol. H at 57. He even went so far as to testify that the absence of Burke's hair was consistent with the testimony that Burke had only been in the apartment three to five minutes. *Id.* Finally, as discussed earlier, this Court cannot characterize the evidence against the Petitioners as weak. *See* discussion *supra* at 363. Mindful of the Supreme Court's comments about the realities surrounding closing arguments at trial,[12] this

---

**11.** The prosecutor's statement on this issue is as follows:

> Now, let me suggest to you the crucial moment, when Mr. Nicholas said, "Ladies and gentlemen, the hair is not there and it should have been. The hair is not there, and it should have been." And let me finish his thought: "And therefore, it didn't happen." What I would like each and every one of you to do, if you would like to, is think for a moment. You have sat in those chairs for seven days. You have left those chairs five, six times a day. Forty to forty-two times, you have been in and out. There is not one hair on any of those chairs, your hairs. Does that

mean you weren't sitting here? Think about that. Think about how fragile that bit of evidence is and Mr. Nicholas suggesting that the hair wasn't there and it should have been.

Tr., D.I. 9B, Vol. I at 104–05.

**12.** In *Donnelly,* the Supreme Court stated:

> The "consistent and repeated misrepresentation" of a dramatic exhibit in evidence may profoundly impress a jury and may have a significant impact on the jury's deliberations. Isolated passages of a prosecutor's argument, billed in advance to the jury as a matter of opinion not of evidence, do not reach the same proportions. Such arguments, like all

Court must find that, in the context of the trial as a whole, the prosecutor's comment about the absence of hairs on the jurors' chairs did not render the trial fundamentally unfair.

### What the Prosecutor "Knew"

The Court next comes to a difficult question of law unsuspectingly raised by the Magistrate and apparently overlooked by the parties. In their opening brief, the Petitioners ask this Court to evaluate three statements made by the prosecutor in support of their claim that comments made during his summation violated their right to due process. D.I. 19 at 89–91. The Magistrate did not consider these statements because they were not raised in the State courts. D.I. 23 at 19. The Petitioners object to the Magistrate's conclusion by arguing that they urged the Delaware Supreme Court to "reverse on the basis of the cumulative effect of all of the prosecutor's improper remarks." D.I. 27 at 24–25. On the other hand, the State suggests that the Magistrate was correct and relies upon *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). D.I. 29, ¶ 16.

### (a) *Exhaustion of Remedies*

In order for this Court to have jurisdiction over the Petitioners' habeas corpus claims, the Petitioners must first have exhausted all of their State remedies. *Lundy*, 455 U.S. at 522, 102 S.Ct. at 1205; *O'Halloran v. Ryan*, 835 F.2d 506, 508 (3rd Cir.1987); *Gibson v. Scheidemantel*, 805 F.2d 135, 138 (3rd Cir.1986). If the District Court is presented with a habeas corpus petition which contains both exhausted and unexhausted claims, the petition must be dismissed. *Lundy*, 455 U.S. at 522, 102 S.Ct. at 1205. Thus, the Magistrate could not properly resolve some of the habeas corpus claims and, at the same time, not resolve others because they were not presented to the State court. Nor could the State support the Magistrate's Report and Recommendation and, at the same time, agree that the Petitioners have not exhausted all of their claims. The issue, rather, is whether the Petitioners raise three new unexhausted claims or whether they have, in fact, exhausted their State remedies.

In order for the exhaustion requirement to be satisfied, "the federal claim must be fairly presented to the state courts." *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). Thus, the Supreme Court requires that the "substantial equivalent" of the federal habeas corpus claim be first presented to the State courts.[13] *Picard*, 404 U.S. at 278, 92 S.Ct. at 513; *Gibson*, 805 F.2d at 138; *Bisaccia v. Attorney General of State of N.J.*, 623 F.2d 307, 310 (3rd Cir.), *cert. denied*, 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980); *Fennell v. Goolsby*, 630 F.Supp. 451, 454 (E.D.Pa.1985). The Third Circuit has explained that,

> A determination of whether the substance of the appellant's claim was advanced in the state proceedings requires "a searching scrutiny by the federal habeas court of the points that were raised in the state tribunals, in order to ensure that the state system was granted a fair opportunity to confront arguments that are propounded to the federal habeas courts."

---

closing arguments of counsel, are seldom carefully constructed *in toto* before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. *Donnelly*, 416 U.S. at 646–47, 94 S.Ct. at 1873.
In *Darden*, the Supreme Court recognized the realities surrounding a criminal trial when it agreed with the District Court that "'Darden's trial was not perfect—few are—but neither was it fundamentally unfair.'" *Darden*, 477 U.S. at 183, 106 S.Ct. at 2473, quoting *Darden v. Wainwright*, 513 F.Supp. 947, 958 (M.D.Fla.1981).

13. The "substantial equivalent of a claim" is obviously not intended to mean that a petitioner may only raise in federal court the word for word duplicate claim rased in state court. The Supreme Court recognized that,

> obviously there are instances in which "the ultimate question for disposition" ... will be the same despite variations in the legal theory or factual allegations urged in its support.... Hence, we do not imply that respondent could have raised the equal protection claim only by citing "book and verse of the federal constitution."

*Picard*, 404 U.S. at 277–78, 92 S.Ct. at 513 (citations omitted).

*Bisaccia,* 623 F.2d at 310, quoting *Zicarelli v. Gray,* 543 F.2d 466, 472 (3rd Cir.1976) (en banc). The general consensus is that the same "claim" is presented in both State and Federal Courts when the "method of analysis" presented in the Federal Court was "readily available to the state court." *Stanley v. Illinois,* 405 U.S. 645, 658 n. 10, 92 S.Ct. 1208, 1216 n. 10, 31 L.Ed.2d 551 (1971); *Zicarelli,* 543 F.2d at 472; *Fennell,* 630 F.Supp. at 454. "Within the contours of a particular argument, however, not every detail need have been put before the state court in order to present all facets of the argument to the federal court in a petition for habeas." *Zicarelli,* 543 F.2d at 473 n. 31, citing *Smith v. Goguen,* 415 U.S. 566, 576–77, 94 S.Ct. 1242, 1248–49, 39 L.Ed.2d 605 (1974) (dictum); *Fennell,* 630 F.Supp. at 455.

In *Patterson v. Cuyler,* 729 F.2d 925 (3rd Cir.1984), the Third Circuit dealt with an issue similar to that before this Court. In *Patterson,* the habeas petitioner on appeal argued that he was entitled to an evidentiary hearing on whether the police timely administered the *Miranda* warnings. *Id.* at 928. The petitioner argued that the fact that his girl friend was being held at the police headquarters was a factor that should have been considered in determining whether he was in custody for *Miranda* purposes. *Id.* The appellee maintained that the appellant had not exhausted any claim with regard to the detention of his girl friend. *Id.* The Third Circuit held, however, that the appellant had exhausted his State remedies. *Id.* at 929. The court explained that the appellant "presented to the state courts the ultimate constitutional question as to whether he was in custody. His failure to make every

factual argument to support that claim does not constitute a failure to exhaust." *Id.; see also United States ex rel. Johnson v. Johnson,* 531 F.2d 169 (3rd Cir.), *cert. denied,* 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976) (the general issue of trial counsel's representation was fairly presented to the State courts); *but see Gibson,* 805 F.2d 135.

In accordance with the case law, this Court concludes that the Petitioners have exhausted their available State remedies. They presented to the Delaware Supreme Court the ultimate constitutional question of whether the prosecutor's closing argument denied them their right to due process. Their failure to raise every factual argument to support this claim does not constitute a failure to exhaust. *See Patterson,* 729 F.2d at 929. In their opening brief before the Delaware Supreme Court, the Petitioners did contend that the prosecutor's closing argument, as a whole, violated their right to due process. Defendants Below–Appellants' Opening Brief, January 12, 1984, D.I. 9A at 44. While the Delaware Supreme Court dealt with specific comments raised by the Petitioners other than the ones now contested, the court recognized that it must determine whether there was undue prejudice to the Defendants. *Burke,* 484 A.2d at 498. Furthermore, since the Delaware Supreme Court evaluated several portions of the prosecutor's closing argument, it is reasonable to infer that the entire argument was available for review. Thus, the method of analysis asserted here in Federal court was available to the State court. This Court concludes, therefore, that the Petitioners' claim was fairly presented to the State courts.[14]

---

**14.** *Gibson* does not require a different result. In *Gibson,* the appellant argued that he exhausted his claim that his counsel failed to protect his juvenile status since it was an element of the overall assertion of ineffective assistance of counsel. *Gibson,* 805 F.2d at 138. The Third Circuit, however, held that the transcripts of the state court hearings revealed that the appellant only raised three alternative bases for finding ineffective assistance of counsel. *Id.* at 139. The Court of Appeals stated that "the New Jersey courts could not have been expected, *sua sponte,* to consider [Appellant's] ineffective as-

sistance of counsel claim to include a claim that counsel failed to protect his juvenile states, and it was therefore not fairly presented to the state courts." *Id.* Thus, the claim was not exhausted. *But see United States ex rel Johnson,* 531 F.2d at 173.

In the petition before this Court, the Delaware Supreme Court was not required to raise the issue *sua sponte.* Rather, the Petitioners' fairly presented the issue that the prosecutor's closing argument as a whole violated their constitutional rights to due process. As such, the facts

### (b) *Statements at Issue*

■ The Petitioners contend that three statements made in the prosecutor's closing summation violated their right to due process: (1) the Prosecutor stated that he knew what time John Forbes had an altercation with Karron Reed. Tr., D.I. 9B, Vol. I at 19; (2) that he knew what color Lepkowski's car was on the day the incident occurred, even though a defense witness testified it was a different color, *id.* at 27; and (3) the prosecutor told the jury to "consider what we all know" and then referred to a statement allegedly made by one of the Petitioners. *Id.* at 28. *See* D.I. 19 at 89–91.

This Court finds that none of these statements rendered the Petitioners' trial fundamentally unfair. Taken in their proper context, the prosecutor was merely summing up for the jury testimony that had previously been given. As to the fact that the prosecutor knew what time John Forbes argued with Karron Reed, it seems unreasonable that the jury would infer anything other than the fact that the State investigated the facts in order to prepare for trial. As to the fact that the prosecutor knew what color the car was when he cross-examined the defense witness, the prosecutor and the jury were informed as to such by Mrs. Hayden who testified earlier. Tr., D.I. 9B, Vol. H at 83. Finally, the prosecutor did not only allude to Burke's alleged statement when he told the jury to "remember what we all know." Rather, the prosecutor was summing up a litany of facts. Tr., D.I. 9B, Vol. I at 28. These comments, furthermore, must be evaluated in light of the strength of the evidence and the time spent by the jury hearing such.

When all of the factors are considered, none of the remarks made rendered the trial fundamentally unfair.

### *"Charlatan" Expert*

■ The Petitioners next object to the Magistrate's recommendation about the prosecutor's comment regarding the defense expert presented at trial. D.I. 27 at 25. During closing remarks, the prosecutor referred to the Defendants' expert as a "hired gun" and a "charlatan" and, according to the Petitioners, bolstered the credibility of his expert by telling the jury that they were not "jacks of all trades." Tr., D.I. 9B, Vol. I at 40.[15] The Magistrate concluded that there was nothing impermissible about arguing that a fee arrangement may affect a witness' credibility. D.I. 23 at 20. The Petitioners object to the conclusion that it is permissible to challenge an expert witness through *ad hominum* argument and to vouch for your own witnesses merely because they are FBI agents. D.I. 27 at 25.

Whether or not the prosecutor properly delved into the Defendants' fee arrangement with their expert witness, the question before this Court is whether these comments rendered the trial fundamentally unfair. Viewing these comments in the context of the trial as a whole, this Court holds that they did not do so. As discussed *supra*, the evidence presented against the Petitioners is not weak. Furthermore, the jury heard several experts testify on the same issues. During the presentation of the defense expert, defense counsel brought out the extensive qualifications of his expert witness. Tr., D.I. 9B, Vol. H at 39–45. Furthermore, during his closing ar-

---

alleged before this Court are merely new factual arguments on the identical issue as opposed to a new claim not revealed in the record below.

15. The pertinent part of the prosecutor's comment is as follows:

What is Stuart James? He is the guy that the defense paid a thousand dollars for, to come here and tell you what you can read in the FBI report. He is the guy they paid a thousand dollars to, to look at reports. "But if you pay me a little more, Mr. Nicholas, I'll look at the evidence." Is that a hired gun? Is that a charlatan?....

The fact of the matter is that he flies in the face of Maureen Higgins and Michael Warren, these two special agents of the Federal Bureau of Investigation. That's all they do. They go all over the country. They are not jacks of all trades. They can't tell you about epithelial cells. And on cross-examination: "I'm not a cytologist, and cytologists deal with cells. But I'm a jack of all trades. But I'll tell you this, and I'll tell you that, because I got a thousand dollars for coming down here."
Tr., D.I. 9B, Vol. I at 40.

gument, defense counsel challenged the prosecutor's characterization of the defense witness as a charlatan and reiterated the qualifications needed to put an expert on the stand. *Id.* at 76–77. Finally, the jury heard the qualifications of the State's experts for themselves. Tr., D.I. 9B, Vol. F at 5–7, 24–25, 27.

### Prosecutor's War Record

■ Finally, the Petitioners argue that the prosecutor's analogizing his service in Vietnam to serving on a jury unconstitutionally prejudiced the Petitioners.[16] The Magistrate concluded that, while the prosecutor's comments were "probably wrong", it is "insulting to the jury to infer that this approach would sway them from rendering a fair and impartial verdict based solely on the evidence." D.I. 23 at 20. Needless to say, the Petitioners object to the Magistrate's conclusion that they were not prejudiced by them. D.I. 27 at 26.

This Court must conclude that the prosecutor's remarks did not violate the Petitioners' constitutional right of due process. It must be remembered that, while the prosecutor's comments are close to condemnable,[17] it is not enough that the comments are undesirable or improper. *Darden,* 477 U.S. at 181, 106 S.Ct. at 2472. The relevant question is whether the comments rendered the Petitioners' trial fundamentally unfair. *Id.,* citing *Donnelly,* 416 U.S. at 637, 94 S.Ct. at 1868. Furthermore, this Court's standard of review is not the broad one of supervisory power but it is the narrow one of due process. *Id.* The jury sat through several days of trial and heard numerous witnesses. The State presented the victim who testified against the Petitioners. This testimony, furthermore, was corroborated by Lepkowski's admissible testimony. The State, to continue, put forward expert testimony which also corrobo-

rated the victim's testimony and also placed two of the Petitioners at the scene of the rape while not ruling out the possibility of the third being present. It is true that the defense put forward its own witness, including both expert and alibi. It is difficult for this Court to conclude, however, that the jury was not basing its decision on its determination of all the witnesses' credibility, as it should. Furthermore, although the prosecutor's comment introduced the idea of performing one's patriotic duty, this was an isolated instance and not the manifestation of a recurrent theme brought out by extensive comments. Thus, in the context of the trial as a whole, while the prosecutor's reference to his service in Vietnam might be considered improper, it was not so prejudicial as to violate the Petitioners' constitutional right of due process.

The Petitioners asked this Court to consider nine comments by the prosecutor. In the isolated confines of this Opinion, there may be the possibility that their impact appears great. However, when these comments are properly placed in the context of seven hundred sixty-five pages of trial transcript and evaluated under the proper standard, they do not achieve constitutional magnitude. After considering the remarks, both on their own and in the aggregate, this Court concludes that the prosecutor's closing argument did not render the Petitioners' trial fundamentally unfair. Consequently, the petition for habeas corpus cannot be granted on the basis of this claim.

---

**16.** During his summation, the prosecutor told the jury that:

Simply enough, many of us, as Americans, are called upon for a moment to perform a duty. Literally, many of you were called one particular night and asked to be in Court the next day to perform a duty. In my generation, we were sitting around having beer in a fraternity house, and seven months later we were diving out of helicopters in elephant grass in

Vietnam. But we all performed those duties to the best of our abilities. That is what we have to do. That is our duty.
Tr., D.I. 9B, Vol. I at 104.

**17.** Commenting on the prosecutor's closing argument, the Delaware Supreme Court stated that "statements to the jury ... made by the prosecutor in this case border on professional impropriety." *Burke,* 484 A.2d at 498 n. 10.